STANLEY J. PANIKOWSKI (Bar No. 224232)
stanley.panikowski@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel:  619.699.2700
Fax:  619.699.2701

Tamar Y. Duvdevani (*pro hac vice*) (NY Bar No. 4148847)
tamar.duvdevani@dlapiper.com
Matthew N. Ganas (*pro hac vice*) (NY Bar No. 5070636)
matt.ganas@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York  10020-1104
Tel:  212.335.4500
Fax: 212.335.4501

*Attorneys for Defendant NIKE, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWHI LEONARD,<br><br>                  Plaintiff,<br><br>          v.<br><br>NIKE, INC.<br><br>                  Defendant. | CASE NO.  19-cv-01035-BAS-BGS<br><br>**ANSWER AND COUNTERCLAIMS TO COMPLAINT FOR DECLARATORY RELIEF**<br><br>JURY TRIAL DEMANDED |

Defendant NIKE, Inc. ("NIKE") hereby submits its Answer and Counterclaims to Plaintiff Kawhi Leonard's Complaint for Declaratory Relief.

1.      Denies for lack of sufficient knowledge or information to form a belief about the truth (hereafter "denies for lack of sufficient knowledge or information") of each allegation in Paragraph 1 of the Complaint, except admits that Plaintiff was drafted to the National Basketball Association (the "NBA") in 2011.

2.      Denies each allegation in Paragraph 2 of the Complaint, except admits that Plaintiff had an endorsement deal with NIKE that was effective from October 1, 2011 to September 30, 2018 (hereinafter, the "Contract").

3.      Denies each allegation in Paragraph 3 of the Complaint, except admits that NIKE filed an application for copyright registration of the logo and design NIKE owns and developed in connection with the Contract (hereinafter, the "Claw Design").  NIKE further avers that the design that Leonard created and the Claw Design that NIKE's designers created and that NIKE subsequently registered with the Copyright Office are distinct works, as seen below:

| Leonard's Work | NIKE's Copyrighted Claw Design |
|---|---|
|  |  |

4.      Denies for lack of sufficient knowledge or information each allegation in Paragraph 4 of the Complaint, except admits that NIKE has objected to Plaintiff's commercial use of the Claw Design.

5.      Denies each allegation in Paragraph 5 of the Complaint, except admits that the Complaint alleges and seeks a declaratory judgment concerning the issues of non-infringement, copyright ownership, and fraud on the Copyright Office.

6.      Admits the allegations in Paragraph 6 of the Complaint.

7.      Avers that Paragraph 7 of the Complaint asserts a legal conclusion to which no response is required.  To the extent a response is required, admits that personal jurisdiction exists over NIKE in the State of California.

8.      Denies that venue is proper in this Court in view of the Contract's valid and enforceable forum selection clause that establishes an Oregon court as the exclusive venue to hear this action.  Admits that in the absence of the Contract's

1    governing forum selection clause, venue in this Court would otherwise be proper

2    pursuant to 29 U.S.C. § 1391.

3         9.    Admits that Plaintiff is an American professional basketball player,

4    and denies for lack of sufficient knowledge or information the remaining

5    allegations in Paragraph 9 of the Complaint.

6         10.    Admits the allegations in Paragraph 10 of the Complaint.

7         11.    Admits the allegation in Paragraph 11 of the Complaint.

8         12.    Admits that Plaintiff is an American professional basketball player and

9    that Plaintiff played for the Toronto Raptors of the NBA at the time of the

10   Complaint's filing but denies that Plaintiff is currently playing for the Toronto

11   Raptors.

12        13.    Admits upon information and belief the allegations in Paragraph 13 of

13   the Complaint.

14        14.    Admits upon information and belief the allegations in Paragraph 14 of

15   the Complaint.

16        15.    Denies for lack of sufficient knowledge or information each allegation

17   in Paragraph 15 of the Complaint.

18        16.    Admits that Plaintiff has worn jersey number "2" when playing for the

19   San Antonio Spurs and Toronto Raptors in the NBA and denies for lack of

20   sufficient knowledge or information each other allegation in Paragraph 16 of the

21   Complaint.

22        17.    Denies for lack of sufficient knowledge or information the allegations

23   in Paragraph 17 of the Complaint.

24        18.    Denies for lack of sufficient knowledge or information the allegations

25   in Paragraph 18 of the Complaint and avers that the "Leonard Logo," as that term

26   defined therein and used throughout the Complaint, differs from the Claw Design

27   developed in connection with the Contract and owned by NIKE.

28   /////

19.     Denies for lack of sufficient knowledge or information the allegations in Paragraph 19 of the Complaint.

20.     Admits the allegations in Paragraph 20 of the Complaint.

21.     Admits the allegations in Paragraph 21 of the Complaint.

22.     Admits Paragraph 22 of the Complaint partially quotes from the Contract's introductory paragraph.  Except as so admitted, denies the allegations in Paragraph 22 of the Complaint, and refers to the Contract for the true, complete and accurate contents thereof.

23.     Admits the allegations in Paragraph 23 of the Complaint.

24.     Admits that NIKE created and provided a number of proposed designs to Leonard in connection with the Contract, and except as so admitted, denies the allegations in Paragraph 24 of the Complaint.

25.     Admits that Leonard forwarded to NIKE a design sketch of a hand that incorporated the initials "KL" and the number 2 that appears in Paragraphs 2, 8 and 26 and Exhibit E to the below Counterclaims, and except as so admitted, denies the allegations in Paragraph 25 of the Complaint.

26.     Admits that NIKE created and provided a number of proposed designs to Leonard in connection with the Contract in or around the Spring of 2014, some but not all of which comprised of a hand that incorporates the initials "KL" and the number 2, and except as so admitted, denies the allegations in Paragraph 26 of the Complaint.

27.     Denies the allegations in Paragraph 27 of the Complaint.

28.     Admits that NIKE created and provided additional proposed designs to Leonard in connection with the Contract in or around June 2014, some but not all of which comprised of a hand that incorporates the initials "KL" and the number 2, and except as so admitted, denies the allegations in Paragraph 28 of the Complaint.

29.     Admits that Leonard approved one of the proposed designs that NIKE created and provided in or around June 2014 that comprised of a hand that

incorporates the initials "KL" and the number 2, for the purpose of affixing that design to NIKE merchandise in connection with the Contract, and except as so admitted, denies the allegations in Paragraph 29 of the Complaint.

30.    Admits that the agreed-upon logo was not previously registered by any third party as of June 2014, and except as so admitted, denies the allegations in Paragraph 30 of the Complaint.

31.    Denies the allegations in Paragraph 31 of the Complaint.

32.    Denies the allegations in Paragraph 32 of the Complaint.

33.    Denies the allegations in Paragraph 33 of the Complaint.

34.    Denies the allegations in Paragraph 34 of the Complaint.

35.    Denies the allegations in Paragraph 35 of the Complaint.

36.    Admits that NIKE filed an application with the U.S. Copyright Office to register a work entitled "Kawhi Leonard Logo," and except as so admitted, denies the allegations in Paragraph 36 of the Complaint.

37.    Admits that NIKE's application for registration of the Claw Design was granted and given Registration No. VA0002097900 (the "Registration"), and except as so admitted, denies the remaining allegations in Paragraph 37 of the Complaint, including that the Registration covers the "Leonard Logo" as that term is defined in the Complaint.

38.    Admits that NIKE claimed authorship and all necessary rights and permissions to the Claw Design subject to the Registration, and except as so admitted, denies the remaining allegations in Paragraph 38 of the Complaint, including that any of NIKE's representations to the Copyright Office made in connection with the Registration pertained to the "Leonard Logo" as that term is defined in the Complaint.

39.    Admits that NIKE claimed that the Claw Design subject to the Registration was authored in 2014 and first published on October 28, 2014, and except as so admitted, denies the remaining allegations in Paragraph 39 of the

Complaint, including that any of NIKE's representations to the Copyright Office made in connection with the Registration pertained to the "Leonard Logo" as that term is defined in the Complaint.

40.    Denies the allegations in Paragraph 40 of the Complaint.

41.    Admits that NIKE did not notify Leonard of its intention to apply for the Registration or notify Leonard when the Registration was granted, and except as so admitted, denies the remaining allegations in Paragraph 41 of the Complaint, including that the Registration covers the "Leonard Logo" as that term is defined in the Complaint.

42.    Admits upon information and belief that on November 9, 2017 Leonard applied for and subsequently received registration of two trademarks in three different categories of registration, and except as so admitted, denies the remaining allegations in Paragraph 42 of the Complaint, including that Plaintiff's trademark registrations are directed to the "Leonard Logo" as that term is defined in the Complaint.

43.    Denies the allegations in Paragraph 43 of the Complaint.

44.    Denies for lack of sufficient knowledge or information the allegations in Paragraph 44 of the Complaint.

45.    Admits that on December 21, 2018, John Matterazzo, NIKE's VP & Global Counsel for Sports Marketing, wrote to one of Leonard's representatives stating that NIKE owns the Claw Design and the Registration, and demanded that Leonard cease using the Claw Design on non-NIKE merchandise, and refers to that communication for the true, complete and accurate contents thereof.  Except as so admitted, denies the remaining allegations in Paragraph 45 of the Complaint, including that NIKE's December 21, 2018 letter pertained to any claim of rights in or to the "Leonard Logo" as that term is defined in the Complaint.

46.    Admits that on January 30, 2019, Leonard's counsel responded to NIKE's December 21, 2018 letter by requesting that NIKE rescind the Registration

and by informing NIKE that Leonard intended to continue to use the Claw Design on non-NIKE merchandise and that he might affix the Claw Design to "the basketball shoes he will personally be wearing," and further refers to that communication for the true, complete and accurate contents thereof.  Except as so admitted, denies the remaining allegations in Paragraph 46 of the Complaint, including that the January 30, 2019 letter pertained to the "Leonard Logo" as that term is defined in the Complaint.

47.    Admits that on March 11, 2019, NIKE, through its counsel, responded to the January 30, 2019 letter reinforcing that it owns all intellectual property rights in the Claw Design and demanding that Plaintiff cease and desist from unauthorized use of the Claw Design, and further refers to that communication for the true, complete and accurate contents thereof.  Except as so admitted, denies the remaining allegations in Paragraph 47 of the Complaint, including that the March 11, 2019 letter pertained to the "Leonard Logo" as that term is defined in the Complaint.

## ANSWER TO PLAINTIFF'S CLAIM FOR RELIEF

(Declaratory Judgment)

48.    In answer to the allegations in Paragraph 48 of the Complaint, NIKE realleges each admission, averment and denial set forth hereinabove in response to Paragraphs 1-47 of the Complaint.

49.    Admits that an actual controversy exists between NIKE and Plaintiff, and except as so admitted, denies the remaining allegations in Paragraph 49 of the Complaint.

50.    Denies the allegation in Paragraph 50 of the Complaint, and avers that Paragraph 50 of the Complaint asserts a legal conclusion to which no response is required.

/////

/////

51. Denies the allegation in Paragraph 51 of the Complaint, and avers that Paragraph 51 of the Complaint asserts a legal conclusion to which no response is required.

52. Denies the allegations in Paragraph 52 of the Complaint, and avers that Paragraph 52 of the Complaint asserts legal conclusions to which no response is required.

53. Denies the allegation in Paragraph 53 of the Complaint, avers that the Registration is not directed to the "Leonard Logo" as that term is defined in the Complaint, and further avers that Paragraph 53 of the Complaint asserts a legal conclusion to which no response is required.

54. Denies the allegation in Paragraph 54 of the Complaint, avers that the Registration is not directed to the "Leonard Logo" as that term is defined in the Complaint, and further avers that Paragraph 54 of the Complaint assert a legal conclusion to which no response is required.

55. Denies the allegation in Paragraph 55 of the Complaint that NIKE defrauded the Copyright Office, avers that the Registration is not directed to the "Leonard Logo" as that term is defined in the Complaint, and further avers that Paragraph 55 of the Complaint assert a legal conclusion to which no response is required.

56. Admits that Plaintiff seeks a declaratory judgment on the grounds enumerated in Paragraph 56 of the Complaint, denies that Plaintiff is entitled to any of the declaratory judgments sought in Paragraph 56 or the Prayer for Relief section of the Complaint, and avers that the Registration is not directed to the "Leonard Logo" as that term is defined in the Complaint.

/////

/////

/////

/////

## AFFIRMATIVE DEFENSES

NIKE states the following as affirmative defenses without conceding that NIKE has either the burden of pleading or of persuasion as to each of these legal principles.

## FIRST AFFIRMATIVE DEFENSE

### (Failure to State a Claim)

57.   Plaintiff's Complaint and each count therein fails to state facts sufficient to constitute a claim for relief against NIKE.

## SECOND AFFIRMATIVE DEFENSE

### (Copyright Ownership)

58.   Plaintiff's Complaint and each count therein fails because NIKE, and not Plaintiff, is the exclusive owner of the Claw Design subject to the Registration.

59.   The Claw Design is an original work of authorship and copyrightable subject matter under the laws of the United States.

60.   The Claw Design was duly registered with the United States Copyright Office by NIKE under Registration No. VA0002097900.

61.   In the Contract, Plaintiff expressly acknowledged that NIKE exclusively owns all rights, title, and interest in any logos, copyrights, or other intellectual property created by NIKE or Plaintiff in connection with the Contract. The Claw Design subject to the Registration was created in connection with the Contract, as Plaintiff's own allegations confirm.  (*See* Compl. ¶¶ 23-29.)

62.   In addition, Nike exclusively owns the Claw Design subject to the Registration because NIKE designers authored the Claw Design on a "work-for-hire" basis on behalf of NIKE, as an original work of authorship, and fixed the Claw Design in a tangible medium of expression.

63.   Plaintiff did not author the Claw Design subject to the Registration. On information and belief, Plaintiff has admitted such in published interview statements.  *See* Kiel, George, "The Oral History of Kawhi Leonard's 'Klaw'

Logo," Jun. 5, 2019, <u>NiceKicks.com</u> (attributing the following statements to Plaintiff from an October 2014 interview: "I drew up the rough draft, sent it over and they (Jordan Brand) made it perfect…I give the Jordan Brand team all the credit because I'm no artist at all…They refined it and made it look better than I thought it would ever be, and I'm extremely happy with the final version.") (*available at*: https://www.nicekicks.com/kawhi-leonard-says-claw-logo-idea/) (last visited July 17, 2019). (*See* Ex. C to NIKE's Counterclaims.)

64.     Leonard did not employ or commission the designers that authored the Claw Design subject to the Registration on a "work-for-hire" basis.

65.     NIKE has not assigned or otherwise transferred any of its ownership rights in or to the registered Claw Design to Plaintiff or any third-party.

### THIRD AFFIRMATIVE DEFENSE

### (Improper Venue Based On Contractual Forum Selection Clause)

66.     The Contract between Plaintiff and NIKE contains a forum selection clause requiring that any suit or action arising under the Contract be filed in a court of competent jurisdiction in the State of Oregon.

67.     As set forth in NIKE's motion to transfer pursuant to 28 U.S.C. 1404(a) filed concurrently herewith, the Contract's forum selection clause requires that this action be transferred from this Court to the District of Oregon.

68.     The Contract's forum selection clause is valid and was not entered as the result of any fraud or overreaching.

69.     Enforcement of the forum section clause would not be unreasonable or unjust, and there is no public policy interest that would justify setting the forum selection clause aside in favor of this judicial District.

70.     Plaintiff's declaratory judgment claims, as well as NIKE's defenses and counterclaims asserted herein, all arise under the Contract because they relate to the parties' rights and obligations enumerated in the Contract, and because

/////

interpretation and application of the Contract's provisions are necessary to resolve the parties' dispute.

## ADDITIONAL DEFENSES

NIKE reserves the right to assert additional defenses based on information learned or obtained during discovery.

WHEREFORE, Defendant NIKE requests that:

(1)  This Court transfer this action to the District of Oregon pursuant to 28 U.S.C. 1404(a) and the Contract's valid and enforceable forum selection clause;

(2)  Judgment be entered in NIKE's favor as to the entire action, and dismiss all claims by Plaintiff with prejudice;

(2)  NIKE be awarded its costs and expenses of suit, including reasonable attorneys' fees, incurred in the defense of this action; and

(3)  NIKE be awarded all such other and further relief as deemed just and proper.

## COUNTERCLAIMS

Pursuant to Fed. R. Civ. P. 13, Counterclaim-Plaintiff NIKE, Inc. ("NIKE") asserts the following Counterclaims against Counterclaim-Defendant Kawhi Leonard ("Plaintiff") and, by and through its counsel, alleges as follows:

## INTRODUCTION

1.      In this action, Kawhi Leonard seeks to re-write history by asserting that he created the "Claw Design" logo, but it was not Leonard who created that logo. The "Claw Design" was created by a talented team of NIKE designers, as Leonard, himself, has previously admitted.

2.      In his Complaint, Leonard alleges he provided a design to NIKE. That is true. What is false is that the design he provided was the Claw Design. Not once in his Complaint does Leonard display or attach either the design that he provided or the Claw Design. Instead, he conflates the two, making it appear as though those discrete works are one and the same. They are not. The images of the "rough draft"

Leonard *actually* provided to NIKE and NIKE's Claw Design are below:

| Leonard's "Rough Draft" | NIKE's Copyrighted Claw Design |
|---|---|
|  |  |

3.    In light of the actual history of this dispute, by its Counterclaims, NIKE requests a declaration of copyright ownership and asserts claims against Leonard for copyright infringement, fraud on the Copyright Office, and breach of the Contract.

## SUMMARY OF THE DISPUTE

4.    As mentioned above, NIKE and Plaintiff entered into the Contract, which was in effect from October 2011 through September 2018.  The Contract sets forth in clear and unambiguous terms Leonard's acknowledgement of NIKE's ownership of all intellectual property created in connection with the Contract, regardless of whether such intellectual property is created by Leonard or by NIKE.

5.    In connection with that Contract, NIKE's designers, on a "work-for-hire" basis, created the "Claw Design" (reproduced below) on NIKE's behalf, which NIKE subsequently registered with the United States Copyright Office (Registration No. VA0002097900) (the "Registration").

/////
/////
/////

(A true and correct copy of the Registration certificate issued to NIKE is attached hereto as Exhibit B.)

6. Leonard personally signed the Contract expressly acknowledging NIKE's exclusive ownership of all rights, title and interest in and to, among other things, any logos, copyrights, or other intellectual property created in connection with the Contract, including the Claw Design subject to the Registration.

7. Through the following interview statements published on October 29, 2014, Plaintiff credited and lauded the NIKE design team for its creation and development of the Claw Design in connection with the Contract:

> I drew up the rough draft, sent it over and they (Jordan Brand) made it perfect…I give the Jordan Brand team all the credit because I'm no artist at all…They refined it and made it look better than I thought it would ever be, and I'm extremely happy with the final version."

*See* Kiel, George, "The Oral History of Kawhi Leaonard's 'Klaw' Logo," Jun. 5, 2019, NiceKicks.com (*available at*: https://www.nicekicks.com/kawhi-leonard-says-claw-logo-idea/) (last visited July 17, 2019).  (A copy of the publicly available published article is attached hereto as Exhibit C)[1].

---

[1] This story originally published on October 29, 2014, under the title: "Kawhi Leonard Says 'The Claw' Logo Was His Idea."  The story republished, under its new title, on June 5, 2019, two days after Plaintiff filed the Complaint.  The body of the republished story is otherwise the same as it appeared in the original publication.  (A copy of the original article as retrieved from the Internet Archive's "Way Back Machine" is attached hereto Exhibit D and is available at: https://web.archive.org/web/20190604095321/https://www.nicekicks.com/kawhi-leonard-says-

8.      Although, by his own admission, Leonard did not author NIKE's registered Claw Design, Leonard did forward to NIKE the "rough draft" design sketch referenced in his interview, during the iterative design process that took place during the Contract term.  As shown below, Leonard's sketch incorporated the concept of a hand, the initials "KL," and the number "2":



(Attached hereto as Exhibit E is a true and correct copy of the image that Plaintiff sent to NIKE on or around April 14, 2014.)

9.      Leonard's Complaint conflates the registered Claw Design with the "rough draft" sketch shown above, seemingly referring to both of them as the so-called "Leonard Logo," even though they are plainly distinct works.  NIKE does not assert ownership of Leonard's "rough draft" design above, even though, by Leonard's own admission, it was created during the Contract term (*see* Compl. ¶ 18).  However, the Claw Design subject to the Registration is owned exclusively by NIKE pursuant to the clear terms of the Contract, and because NIKE's designers, and not Leonard, are the Claw Design's original authors.

10.      Despite the Contract's intellectual property ownership provision to which Leonard agreed, and despite his prior public acknowledgement that NIKE authored the Claw Design, Leonard has now decided that he, and not NIKE, is the rightful owner of the registered Claw Design, and has gone even further to accuse NIKE of committing fraud by registering its Claw Design with the Copyright

claw-logo-idea/ (last visited July 17, 2019)).

DLA PIPER LLP (US)
SAN DIEGO

EAST\168046712.2

-14-

ANSWER AND COUNTERCLAIM TO COMPLAINT FOR DECLARATORY RELIEF
19-cv-01035-BAS-BGS

Office.  Moreover, in clear contravention of Leonard's contractual obligations and NIKE's exclusive ownership rights in and to the Claw Design, Leonard has continued to use and reproduce the Claw Design, without NIKE's authorization, on his non-Nike apparel worn publicly, and has manifested his imminent intent to commercially exploit the Claw Design on non-NIKE merchandise.  (Compl. ¶¶ 4, 44.)  Thus, in addition to seeking a judicial declaration that NIKE, and not Leonard, is the exclusive owner of the registered Claw Design, NIKE also brings the following Counterclaims: (i) copyright infringement under 35 U.S.C. §§101 *et seq.*, based on Leonard's unauthorized reproduction and intended distribution of the Claw Design; (ii) fraud on the Copyright Office, based on Leonard's intentionally false statements made to Copyright Office in applying for registration of the exact same Claw Design that Leonard knows he did not author and does not own; and (iii) breach of contract, based on Leonard's numerous violations of his contractual obligations under the Contract's clear and unambiguous terms.

## PARTIES

11.     NIKE is a corporation organized and existing under the laws of the State of Oregon, with a principal place of business in Beaverton, Oregon.

12.     On information and belief, Leonard is an individual residing in the State of California.

## JURISDICTION AND VENUE

13.     Original subject matter jurisdiction exists over NIKE's Counterclaims pursuant to the Declaratory Judgments Act, 28 U.S.C. §§ 2201, the Copyright Act 35 U.S.C. §§ 101, and 28 U.S.C. §§ 1331 and 1338.

14.     On information and belief, this Court has personal jurisdiction over Leonard because he is a resident of the State of California, and by virtue of his filing the Complaint in this judicial District.

15.     Should this action be transferred to the District of Oregon in accordance with NIKE's motion to transfer pursuant to 28 U.S.C. § 1404(a) filed

concurrently herewith, personal jurisdiction exists over Leonard in the transferee State of Oregon because he knowingly and willingly agreed to the forum selection clause set forth in Paragraph 21 of the Contract's Standard Terms and Conditions (*see* Exhibit A attached hereto), which provides that that any suit or action arising under the Contract be filed in a court of competent jurisdiction in the State of Oregon, and through which Leonard consented to personal jurisdiction in the State of Oregon.

16.    In the absence of the Contract's valid and enforceable forum selection clause, venue would be otherwise proper in this judicial district pursuant to 28 U.S.C. § 1391 because NIKE regularly conducts business in this judicial District and because, on information and belief and according to Leonard's own allegations in the Complaint, Leonard resided in this judicial District at times relevant to the action.

17.    Should this action be transferred to the District of Oregon in accordance with NIKE's motion to transfer pursuant to 28 U.S.C. § 1404(a) filed concurrently herewith, venue is proper in the District of Oregon pursuant to the valid and enforceable forum selection clause agreed between the parties and set forth in Paragraph 21 of the Contract's Standard Terms and Conditions (*see* Exhibit A attached hereto).

## FACTS

### A.    The Parties' Contractual Relationship

18.    On October 26, 2011, NIKE entered into the Contract with Kawhi Leonard, LLC, as "CONSULTANT," and Kawhi Leonard, as "ATHLETE," who, "for purposes of [the] Contract, [was] under an exclusive employment agreement with CONSULTANT." (*See* Exhibit A.)

19.    Leonard entered into and executed the Contract knowingly and willingly.

/////

20.     The Contract was effective as of October 1, 2011 and provided in part that Leonard would endorse the NIKE brand and NIKE-branded products.

21.     The Contract was subsequently extended, and it ultimately expired without further extension on September 30, 2018.

22.     The Contract attached and incorporated NIKE Standard Terms and Conditions.

23.     Paragraph 8 of the Standard Terms and Conditions provides as follows:

> OWNERSHIP OF NIKE MARKS, DESIGNS & CREATIVES. CONSULTANT (a) acknowledges that NIKE exclusively owns all rights, title and interest in and to the NIKE Marks and that NIKE shall exclusively own all rights, title and interest in and to any logos, trademarks, service marks, characters, personas, copyrights, shoe or other product designs, patents, trade secrets or other forms of intellectual property created by NIKE (and/or its agents), CONSULTANT or ATHLETE in connection with this Contract; (b) shall completely cooperate with NIKE in its efforts to obtain and maintain protection for such right, title and interest, including by promptly executing any documents as may be required by NIKE in connection therewith; and (c) further acknowledges that after expiration or termination of this Contract, NIKE shall continue to have the unrestricted right to use (and without any CONSULTANT or ATHLETE approval) such intellectual property, including without limitation the right to re-issue a "signature" product previously associated with ATHLETE, provided that such post-contractual use shall not then include the ATHLETE Endorsement.

(Exhibit A ¶ 8.)

24.     Through Paragraph 13(b) of the Standard Terms, CONSULTANT represented, warranted and covenanted that: "Neither CONSULTANT nor ATHLETE shall permit, or authorize, any third-party licensee of theirs to use any NIKE Marks or condone any licensee's unauthorized use thereof."  (Exhibit A ¶ 13(b).)

/////

25.     The Standard Terms define "NIKE Marks" as "the NIKE name, the Swoosh Design, the NIKE AIR Design, the Basketball Player Silhouette ('Jumpman') Design or any other trademarks or brands (e.g., Sports Specialties, Brand Jordan, SPL.28) now or hereafter owned and/or controlled by NIKE."  (*Id.* ¶ 1(d).)

26.     During the term of the Contract, Leonard provided to NIKE the following image:



27.     During the term of the Contract, and in connection therewith, NIKE's design team prepared and provided to Leonard a number of proposed designs, for the purpose of creating a logo to affix to NIKE branded merchandise.

28.     During the term of the Contract, and in connection therewith, NIKE's design team created and provided to Leonard the following design proposal:



29.     The image reproduced in Paragraph 28 above was affixed by NIKE to NIKE merchandise worn and endorsed by Leonard.

30.     Beginning as early as Spring 2016, NIKE commercially sold merchandise branded with the design reproduced in Paragraph 28 above.

31.     Paragraph 21 of the Standard Terms includes the following choice-of-law and forum-selection provision (Exhibit A ¶ 21):

> **GOVERNING LAW & JURISDICTION**. This Contract shall be governed by and construed in accordance with the laws of the State of Oregon and except as provided in Paragraph 14, any suit or action arising hereunder shall be filed in a Court of competent jurisdiction within the State of Oregon. CONSULTANT and ATHLETE hereby consent to personal jurisdiction within the State of Oregon and to service of process by registered or certified mail addressed to the respective party as set forth above.

32.     Paragraph 23 of the Standard Terms provides: "**ENTIRE CONTRACT.**" This Contract shall constitute the entire understanding between CONSULTANT and NIKE and may not be altered or modified except by a written agreement, signed by both parties.  Any previous agreements between the parties shall have no further force or effect. (*Id.* ¶ 22.)

33.     Besides the Contract, NIKE and Leonard never entered into a separate written agreement addressing the ownership, title or rights in the design reproduced in Paragraph 28 above.

34.     An article first published on October 29, 2014 attributes the following statements to Leonard: "I drew up the rough draft, sent it over and they (Jordan Brand) made it perfect…I give the Jordan Brand team all the credit because I'm no artist at all…They refined it and made it look better than I thought it would ever be, and I'm extremely happy with the final version." (*See* Exhibits C and D attached hereto.)

/////

/////

**B.    NIKE's Copyright Registration for the Claw Design**

35.    Relying on Contract's terms, and the fact that NIKE's design team originally authored the Claw Design on a "work-for-hire" basis on NIKE's behalf, NIKE filed a copyright application for the Claw Design, which issued as the Registration, effective May 11, 2017.  (*See* Exhibit B attached hereto.)

36.    The design subject to the Registration is the same design reproduced in Paragraph 28 above that NIKE provided and proposed to Leonard during the term of the Contract.

**C.    Leonard's Improper Trademark and Copyright Registrations**

37.    Unbeknownst to NIKE, Leonard improperly filed a U.S. federal trademark application on November 7, 2017 for an alleged mark based on Leonard's purported intent to use such mark in commerce on goods in Class 25, namely, "hats; shirts; pants; shorts; jackets; sweatshirts; sweatpants; jeans."  This application ultimately issued as Registration No. 5,608,427 on or around November 18, 2019 (the "'427 Registration").

38.    The '427 Registration is directed to the same image reproduced in Paragraph 28 above.

39.    According to U.S.P.T.O. records, on or about August 30, 2018, Leonard filed a Statement of Use with the U.SP.T.O. in connection with the '427 Registration, which claimed Leonard had been using the applied-for logo on goods in commerce as follows: jackets as early as February 2016; hats as early as May 2016; shirts, sweatpants, and sweatshirts as early as August 2016; and shorts, pants, and jeans as early as March 2017.

40.    On information and belief, on or around June 3, 2019, Leonard filed a copyright application with the U.S. Copyright Office for a purported work titled "Kawhi Leonard Logo," which has been granted registration as Reg. No. VA0002153704 (the "Leonard Registration").

/////

41.     On information and belief, the Leonard Registration covers the very same Claw Design reproduced in Paragraph 28 above and covered by the Registration duly and rightfully owned by NIKE.

42.     In his application for the Leonard Registration, Leonard fraudulently claimed to be the author and sole owner of the Claw Design, with knowledge that NIKE's designers, and not Leonard, authored the Claw Design, and with specific intent to deceive the U.S. Copyright Office into granting the Leonard Registration to the detriment and prejudice of NIKE, as the true and exclusive owner of the Claw Design.

**D.     The Parties' Dispute**

43.     NIKE became aware in December 2018 that Leonard was continuing to use the Claw Design subject to the Registration on non-NIKE endorsed products.

44.     Accordingly, NIKE notified Leonard that his use (or his sponsors' use) of the Claw Design on products that did not originate from NIKE was in violation of the Contract and requested that Leonard and his sponsors cease use of the same.

45.     After several months of delay, Leonard filed his Complaint during the NBA playoffs.  Leonard's Complaint seeks a judicial declaration that Leonard is the owner of the copyright in the Claw Design subject to the Registration, claims that NIKE committed fraud on the Copyright Office in applying for the Registration, and alleges that Leonard's use of the registered Claw Design does not violate any of NIKE's intellectual property rights.

46.     In the Complaint, Leonard states his intent, in the near future, to use the Claw Design on clothing lines, footwear and on other unspecified apparel products, and to affix the Claw Design on items he intends to bring to market and distribute in connection with sports camps and charity functions.

47.     In fact, during the NBA Finals, Leonard reproduced the Claw Design without NIKE's authorization and affixed it to non-Nike apparel, in violation of

/////

NIKE's exclusive copyright in and to the Claw Design as well as Leonard's obligations and covenants under the Contract.

## FIRST CLAIM FOR RELIEF

### Declaratory Judgment Of Copyright Ownership

48. NIKE re-alleges and incorporates by reference paragraphs 1 through 47 inclusive, as though fully set forth herein.

49. The Claw Design is an original work of authorship and copyrightable subject matter under the laws of the United States.

50. The Claw Design was duly registered with the United States Copyright Office by NIKE under Registration No. VA0002097900.

51. In the Contract, Plaintiff expressly acknowledged that NIKE exclusively owns all rights, title, and interest in any logos, copyrights, or other intellectual property created by NIKE or Plaintiff in connection with the Contract. (*See* Exhibit A ¶ 8.)

52. The Claw Design subject to the Registration was created during the term of the Contract and in connection therewith.

53. NIKE designers authored the Claw Design on a "work-for-hire" basis on behalf of NIKE.

54. Plaintiff did not author the Claw Design subject to the Registration.

55. Leonard did not employ or commission the designers that authored the Claw Design on a "work-for-hire" basis on Leonard's behalf.

56. NIKE has not assigned or otherwise transferred any of its ownership rights in or to the registered Claw Design to Leonard or any third-party.

## SECOND CLAIM FOR RELIEF

### Copyright Infringement

57. NIKE re-alleges and incorporates by reference paragraphs 1 through 56 inclusive, as though fully set forth herein.

/////

58.     The Claw Design is an original work of authorship and copyrightable subject matter under the laws of the United States.

59.     The Claw Design was duly registered with the United States Copyright Office by NIKE under Registration No. VA0002097900.

60.     By reproducing the Claw Design on non-NIKE merchandise without authorization, Leonard has knowingly and willfully infringed, and will continue to infringe, NIKE's copyright in the Claw Design.

61.     Leonard has expressed his manifest intent to distribute and sell merchandise bearing the Claw Design, in further willful violation of NIKE's exclusive right to reproduce and distribute the copyrighted Claw Design.

62.     Each infringement by Leonard of the Claw Design constitutes a separate and distinct act of infringement.

63.     NIKE placed Leonard on notice of his infringement, yet Leonard continued to infringe NIKE's copyright in and to the Claw Design.  As noted above, after NIKE notified Leonard in writing of NIKE's ownership rights in the Claw Design, and demanded that he cease and desist from any continued unauthorized use or reproduction of the Claw Design, Leonard reproduced and affixed the Claw Design without NIKE's authorization to non-Nike apparel that he wore during the NBA Finals, in violation of NIKE's exclusive rights in and to the Claw Design under the Copyright Act.

64.     NIKE is entitled to the maximum statutory damages recoverable, or for other amounts as may be proper, pursuant to 17 U.S.C. §504.

65.     NIKE is further entitled to its attorney's fees and full costs pursuant to 17 U.S.C. §505.

66.     As a direct and proximate result of Defendants' actions Plaintiff will suffer imminent and irreparable harm, much of which cannot be reasonably or adequately measured or compensated in damages.

/////

## THIRD CLAIM FOR RELIEF

## Copyright Cancellation for Fraud on the Copyright Office

67.     NIKE re-alleges and incorporates by reference paragraphs 1 through 66 inclusive, as though fully set forth herein

68.     In the Contract, Plaintiff knowingly and willingly acknowledged that NIKE exclusively owns all rights, title, and interest in any logos, copyrights, or other intellectual property created by NIKE or Plaintiff in connection with the Contract. (*See* Exhibit A ¶ 8.)

69.     In or around April 2014, during the Contract term, Leonard provided to NIKE a "rough draft" sketch that differs substantially from the Claw Design created by NIKE's design team in connection with the Contract.

70.     Through interview statements published in October 2014, Leonard credited NIKE's design team for their work in developing the Claw Design.  (*See* Exhibits C & D.)

71.     Leonard specifically knew that he did not author the Claw Design, and specifically knew of the Contract's intellectual property ownership provision. Nevertheless, Leonard filed an application with the U.S. Copyright Office to register the very same Claw Design created, owned, and duly registered by NIKE. In doing so, Leonard falsely and fraudulently claimed in his copyright application to be the author and sole owner of the Claw Design, and intended to deceive the U.S Copyright Office into granting the Leonard Registration.

72.     NIKE has been, and will continue to be, harmed and prejudiced by the Copyright Office's grant of the Leonard Registration due to Leonard's intentionally fraudulent representations.  For the reasons set forth above, NIKE is the exclusive owner of the Claw Design.  The existence of the Leonard Registration clouds NIKE's title to the Claw Design, presumptively confers upon Leonard exclusive rights under the Copyright Act that belong to NIKE, and deceives the public as to the Claw Design's authorship and ownership.

## FOURTH CLAIM FOR RELIEF

### Breach of Contract, Paragraph 8

73.     NIKE re-alleges and incorporates by reference paragraphs 1 through 72 inclusive, as though fully set forth herein

74.     NIKE and Leonard willingly and knowingly entered into the Contract.

75.     The Contract is valid and enforceable.

76.     NIKE has performed and satisfied all of its duties and obligations under the Contract.

77.     Leonard has breached the Contract by violating the duties and obligations set forth in Paragraph 8 of the Standard Terms.  Despite acknowledging NIKE's exclusive ownership in the Claw Design through the clear and unambiguous terms set forth in Paragraph 8, Leonard has violated such terms by filing the Complaint which falsely asserts that Leonard is the sole owner of the Claw Design and that NIKE committed fraud on the Copyright Office by applying for registration of the Claw Design.

78.     Leonard has further violated the terms of Paragraph 8 of the Standard Terms through his efforts to apply for and obtain federal trademark and copyright registrations associated with the Claw Design, despite expressly acknowledging NIKE's exclusive ownership rights in the Claw Design and agreeing to cooperate with NIKE in its efforts to obtain and maintain protection for its rights, tittle and interest in the Claw Design.  (*See* Exhibit A, ¶ 8.)

79.     As a direct and proximate result of Leonard's breach, NIKE has been irreparably harmed and has suffered monetary damage, in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

### Breach of Contract, Paragraph 13(b)

80.     NIKE re-alleges and incorporates by reference paragraphs 1 through 79 inclusive, as though fully set forth herein.

81. NIKE and Leonard willingly and knowingly entered into the Contract.

82. The Contract is valid and enforceable.

83. NIKE has performed and satisfied all of its duties and obligations under the Contract.

84. Leonard has breached the Contract by violating the duties and obligations set forth in Paragraph 13(b) of the Standard Terms. Despite representing, warranting and covenanting not to permit or authorize any third-parties to use any NIKE Marks or condone unauthorized third-party use thereof, Leonard has breached, and upon information and belief will continue to breach, these terms by using and commercially exploiting the Claw Design on non-NIKE third-party merchandise, as Leonard has alleged in the Complaint. (*See* Compl.¶¶ 4, 44.)

85. The Claw Design constitutes a NIKE Mark subject to Paragraph 13(b) under the terms of the Contract.

86. As a direct and proximate result of Leonard's breach, NIKE has been irreparably harmed and has suffered monetary damage, in an amount to be determined at trial.

## SIXTH CLAIM FOR RELIEF

### Breach of Contract, Paragraph 21

87. NIKE re-alleges and incorporates by reference paragraphs 1 through 86 inclusive, as though fully set forth herein.

88. NIKE and Leonard willingly and knowingly entered into the Contract.

89. The Contract is valid and enforceable.

90. NIKE has performed and satisfied all of its duties and obligations under the Contract.

91. Leonard has breached the Contract by violating the duties and obligations set forth in Paragraph 21 of the Standard Terms, which clearly and

/////

1    unambiguously requires that any suit or action arising under the Contract be filed in

2    a court of competent jurisdiction in the State of Oregon.

3         92.    By filing the Complaint in this District, Leonard has breached the

4    terms set forth in Paragraph 21 of the Contract, directly and proximately causing

5    NIKE monetary harm in an amount to be determined, in its effort to transfer this

6    action to the proper forum.

7                              **PRAYER FOR RELIEF**

8         WHEREFORE, NIKE prays for relief as follows:

9         A.     That the Complaint against NIKE be dismissed in its entirety with

10   prejudice and that a judgment be entered in favor of NIKE and against Leonard;

11        B.     For an entry of judgment declaring that NIKE is the exclusive owner

12   of the copyright in and to the Claw Design;

13        C.     For an entry of judgment against Leonard for infringing and violating

14   NIKE's exclusive rights under the Copyright Act to reproduce and distribute the

15   Claw Design;

16        D.     For an entry of judgment that Leonard committed fraud on the

17   Copyright Office in applying for the Leonard Registration and cancelling the

18   Leonard Registration due to such fraud;

19        E.     For an entry of judgment against Leonard for breaching the Contract,

20   including without limitation Paragraphs 8, 23(b), and 21 of the Standard Terms;

21        F.     For a preliminary and permanent injunction enjoining Leonard from

22   continuing to infringe NIKE's exclusive intellectual property rights in the Claw

23   Design;

24        G.     For an award of monetary damages to compensate NIKE for the harms

25   directly and proximately caused by Leonard's copyright infringement and/or breach

26   of contract;

27        H.     For an award of NIKE's attorney's fees and costs; and

28   /////

1    I.    That NIKE be granted all such other and further relief as the Court

2    deems just and proper.

3                                    **JURY DEMAND**

4        NIKE demands a trial by jury on any claim or issue triable of right by a jury.

5

6    Dated:  July 17, 2019                    **DLA PIPER LLP (US)**

7                                             _/s/ Tamar Y. Duvdevani_

8                                             Stanley J. Panikowski

9                                             401 B Street, Suite 1700
                                              San Diego, CA 92101

10                                            Tel:  619.699.2700

11                                            Fax:  619.699.2701

12                                            Of Counsel:

13                                            Tamar Y. Duvdevani (_pro hac vice_)

14                                            Matthew N. Ganas (_pro hac vice_)
                                              1251 Avenue of the Americas

15                                            New York, New York  10020-1104

16                                            Tel:  212.335.4500
                                              Fax: 212.335.4501

17

18                                            _Attorneys for Defendant NIKE, Inc._

19

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS
## EXHIBITS

| Exhibit | Description | Pages |
|---|---|---|
| A | Contract's Standard Terms and Conditions | 29-41 |
| B | Copyright Registration Certificate - Kawhi Leonard Logo - VA 2-097-900 | 42 |
| C | "The Oral History of Kawhi Leaonard's 'Klaw' Logo," Jun. 5, 2019 | 43-54 |
| D | Copy of Original Article - Kawhi Leonard Says "The Claw" Logo was His Idea - Nice Kicks | 55-60 |
| E | Image Plaintiff sent to NIKE on or around April 14, 2014 | 61 |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28