STANLEY J. PANIKOWSKI (Bar No. 224232)
stanley.panikowski@dlapiper.com
DLA PIPER LLP (US)
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

Tamar Y. Duvdevani (*pro hac vice*) (NY Bar No. 4148847)
tamar.duvdevani@dlapiper.com
Matthew N. Ganas (*pro hac vice*) (NY Bar No. 5070636)
matt.ganas@dlapiper.com
DLA PIPER LLP (US)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

*Attorneys for Defendant NIKE, Inc.*

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWHI LEONARD,<br><br>        Plaintiff,<br><br>   v.<br><br>NIKE, INC.,<br><br>        Defendant. | CASE NO. 19-cv-01035-BAS-BGS<br><br>**DEFENDANT NIKE, INC.'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO TRANSFER VENUE**<br><br>Date: August 19, 2019<br>**NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT**<br>Courtroom: 4B<br>Judge: The Hon. Cynthia A. Bashant |

# TABLE OF CONTENTS

Page

I.      INTRODUCTION ......................................................................................1

II.     FACTUAL BACKGROUND .....................................................................3

   A.     The NIKE-Leonard Men's Pro Basketball Contract...................................3
   B.     Nike's Development of the Claw Design in Connection with the Contract .5
   C.     The Parties' Dispute ..................................................................7

III.    LEGAL STANDARDS ON A MOTION TO TRANSFER BASED ON A
      FORUM SELECTION CLAUSE ...............................................................8

IV.     ARGUMENT.............................................................................................10

   A.     The Contract's Forum Selection Clause is Valid and Enforceable ............10
   B.     The Parties' Disputes Arise Under the Contract.......................................12

V.      CONCLUSION ........................................................................................17

CASES

*Argueta v. Banco Mexicano, S.A.*,
 87 F.3d 320 (9th Cir. 1996)..................................................................9

*Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*,
 571 U.S. 49 (2013).....................................................................8, 9, 10

*Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*,
 No. 2:10-CV-02991-JHN, 2010 WL 5154136 (C.D. Cal. Aug. 12,
 2010) ...........................................................................12, 13, 15

*Carnival Cruise Lines, Inc. v. Shute*,
 499 U.S. 585 (1991).........................................................................10

*Color Switch LLC v. Fortafy Games DMCC*,
 377 F. Supp. 3d 1075 (E.D. Cal. 2019) ......................................passim

*Decker Coal Co. v. Commonwealth Edison Co.*,
 805 F.2d 834 (9th Cir. 1986).............................................................9

*Doe 1 v. AOL LLC*,
 552 F.3d 1077 (9th Cir. 2009)..........................................................10

*Dvorak v. Moody's Analytics Inc.*,
 No. C 10-03657 JSW, 2010 WL 11636243 (N.D. Cal. Oct. 5, 2010) ...............16

*E. & J. Gallo Winery v. Andina Licores S.A.*,
 446 F.3d 984 (9th Cir. 2006)............................................................10

*Edwards v. C4 Planning Solutions, LLC*,
 Case No.: 3:18-cv-02144-BEN-AGS, 2019 WL 1746573 (S.D. Cal.
 Apr. 17, 2019)...................................................................9, 11, 12

*Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*,
 No. 16-CV-00920-LB, 2016 WL 4259126 (N.D. Cal. Aug. 12,
 2016) ..................................................................................15

*Goldman v. U.S. Transport & Logistics, LLC*,
 Case No. 17-cv-00691-BAS-NLS, 2017 WL 6541250 (S.D. Cal.
 Dec. 20, 2017) ...........................................................................8, 9, 10

*Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*,
   820 F. Supp. 503 (C.D. Cal. 1992) ..................................................................9

*Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*,
   949 F. Supp. 1427 (N.D. Cal. 1997) .....................................................8, 13, 14

*Hebe v. Seagrave Fire Apparatus, LLC*,
   CV 07-155 AS, 2007 WL 1541741 (D. Or. May 18, 2007) ...............................13

*Hillis v. Heineman*,
   626 F.3d 1014 (9th Cir. 2010) ........................................................................16

*M/S Bremen v. Zapata Off-Shore Co.*,
   407 U.S. 1 (1972) ....................................................................................10, 11

*Manetti–Farrow, Inc. v. Gucci America, Inc.*,
   858 F.2d 509 (9th Cir. 1988) ......................................................................13, 15

*Molloy v. RK Netmedia, Inc.*,
   No. CV0902614MMMAGRX, 2009 WL 10669608 (C.D. Cal. Oct.
   8, 2009) ........................................................................................................13

*Murphy v. Schneider Nat'l, Inc.*,
   362 F.3d 1133 (9th Cir. 2004) ....................................................................10, 11

*Omron Healthcare, Inc. v. Maclaren Exports Ltd.*,
   28 F.3d 600 (7th Cir. 1994) .............................................................................12

*Ponomarenko v. Shapiro*,
   287 F. Supp. 3d 816(N.D. Cal. 2018) ...............................................................16

*Questrel, Inc. v. Merriam-Webster, Inc.*,
   No. SACV 10-1907 AG MLGX, 2011 WL 7637786 (C.D. Cal.
   Mar. 23, 2011) .................................................................................10, 13, 16

*Richards v. Lloyd's of London*,
   135 F.3d 1289 (9th Cir. 1998) (en banc) ..........................................................10

DLA PIPER LLP (US)
SAN DIEGO

**TABLE OF AUTHORITIES**
**(Cont.)**

Page(s)

*Zako v. Hamilton Co.*,
  No. 5:15-CV-03162-EJD, 2016 WL 344883 (N.D. Cal. Jan. 28,
  2016) ............................................................................................................10

**STATUTES**

28 U.S.C. § 1404(a) ........................................................................................passim

DLA PIPER LLP (US)
SAN DIEGO

# I. INTRODUCTION

In 2011, NIKE and NBA athlete Kawhi Leonard entered into a "Men's Pro Basketball Contract," which ran with extension from October 2011 through September 2018 (the "Contract"). The Contract sets forth in clear and unambiguous terms Leonard's acknowledgement of NIKE's ownership of all intellectual property created in connection with the Contract, regardless as to whether that intellectual property is created by Leonard or by NIKE. In connection with that Contract, NIKE's designers created the "Claw Design" that NIKE subsequently registered with the United States Copyright Office, referred to (but not imaged) in the complaint (Compl., Dkt. 1 ¶¶ 20-29):



Leonard personally signed the Contract containing the IP ownership provision, and in a 2014 article even gave "all the credit" to NIKE's team for the finished product seen above.

While Leonard did not create the Claw Design, he did share with NIKE during the design process his own work that incorporated a hand, the initials "KL", and the number "2," again referenced in but omitted from the Complaint, and replicated below:

/////
/////
/////
/////

DLA PIPER LLP (US)
SAN DIEGO



Although the complaint conflates these two very distinct works and refers to both of them as the "Leonard Logo," NIKE does not assert ownership of Leonard's design above. As far as Nike is concerned, Leonard is free to use it. The Claw Design, on the other hand, belongs to NIKE pursuant to the clear terms of the Contract and because it was created by NIKE's design team.

Despite the Contract IP provision to which Leonard agreed, and despite his prior accolades of NIKE's work in the Claw Design, Leonard has now decided that he, and not NIKE, is the rightful owner of the design, and has even accused NIKE of committing fraud by registering its design with the Copyright Office. NIKE vigorously disputes Leonard's claims of copyright ownership and has asserted in its contemporaneously filed Answer and Counterclaims that NIKE is the rightful owner of the Claw Design, and that Leonard is in breach of the parties' Contract. NIKE looks forward to its day in court to adjudicate its claims.

But the Contract's intellectual property ownership provision is not the only language that Leonard ignores in the parties' agreement. The Contract also contains a forum selection clause conclusively establishing Oregon as the exclusive venue to hear all disputes arising under the Contract. Accordingly, NIKE brings this motion under 28 U.S.C. § 1404(a) to enforce the Contract's forum selection clause, and to seek transfer of this action to the District of Oregon.

/////

/////

Under controlling Ninth Circuit law, this dispute "arises under" the Contract and thus falls within the Contract's Oregon forum selection provision. Each of the parties' claims, defenses, and counterclaims relates to their rights and obligations set forth in the Contract, and interpreting the Contract's intellectual property ownership provision is necessary to resolve the parties' dispute. The Contract plainly states that NIKE exclusively owns any logos or copyrights that were created, *by either* NIKE or Leonard, "in connection with this Contract." Thus, Leonard's declaratory judgment claims for ownership of the Claw Design, non-infringement of any of NIKE's rights thereto, and for fraud on the Copyright Office can only be resolved by interpreting and applying the Contract's provisions. Likewise, NIKE's copyright ownership claim, and its claims for copyright infringement, fraud, and breach of contract, all clearly arise under the Contract.

Because the forum selection clause is valid and enforceable, because the parties' claims arise under the Contract, and because public policy supports enforcement of the forum selection clause, this action should be transferred to the District of Oregon.

## II.      FACTUAL BACKGROUND

### A.      The NIKE-Leonard Men's Pro Basketball Contract

On October 26, 2011 NIKE entered into the Contract with Kawhi Leonard, LLC, as "CONSULTANT," and Kawhi Leonard, as "ATHLETE," who, "for purposes of [the] Contract, [was] under an exclusive employment agreement with CONSULTANT." (*See* Declaration of Dinusha Welliver in Support of NIKE, Inc.'s Motion to Transfer Venue ("Welliver Decl.") at ¶ 2, Ex. 1[1]; Dkt. 1 ¶ 20.) The Contract generally related to, among other things, NIKE's "use of ATHLETE's

---

[1] The Welliver Declaration attaches the Contract as Exhibit 1 in redacted form. Redacted portions of the Contract include highly confidential and sensitive financial and commercial terms irrelevant to the instant Motion. The publicly-filed, redacted version discloses the portions of the Contract relevant to the instant Motion and discussed therein. However, NIKE has filed an unopposed motion for leave to file under seal an unredacted version of the Contract, should the Court wish to review the entire Contract in considering this Motion.

personal services and expertise in the sport of professional basketball and ATHLETE's endorsement of the NIKE brand and use of NIKE products." (Welliver Decl., Ex. 1; *see* Dkt. 1 ¶ 22.) The "Contract Period" originally ran from October 1, 2011 to September 30, 2014. (Welliver Decl., Ex. 1 § A; Dkt. 1 ¶ 21.) The Contract was subsequently extended, and it ultimately expired without further extension on September 30, 2018. (Dkt. 1 ¶ 21.)

The Contract attached and incorporated NIKE's Standard Terms and Conditions (the "Standard Terms"). (*See* Welliver Decl., Ex. 1.) Paragraph 8 of the Standard Terms, "Ownership of NIKE Marks, Designs, and Creatives," provided, in relevant part: "CONSULTANT (a) acknowledges that…NIKE shall exclusively own all rights, title and interest in and to any logos, trademarks, service marks, characters, personas, copyrights, shoe or other product designs, patents, trade secrets or other forms of intellectual property created by NIKE (and/or its agents), CONSULTANT or ATHLETE in connection with this Contract; [and] (b) shall completely cooperate with NIKE in its efforts to obtain and maintain protection for such right, title and interest,…." (Welliver Decl., Ex. 1 ¶ 8.)

Through the Standard Terms, Leonard also "represent[ed], warrant[ed] and covenant[ed]," among other things, that "[n]either CONSULTANT nor ATHLETE shall permit, or authorize, any third-party licensee of theirs to use any NIKE Marks or condone any licensee's unauthorized use thereof." (Welliver Decl., Ex. 1 ¶ 13(b).) "NIKE Marks," in turn, are defined as "the NIKE name, the Swoosh Design, the NIKE AIR Design, the Basketball Player Silhouette ('Jumpman') Design or any other trademarks or brands…now or hereafter owned and/or controlled by NIKE." (*Id.* ¶ 1(d).) In light of the clear language contained in Paragraph 8 (reproduced above) that NIKE owns all marks created by it or by Leonard in connection with the Contract, the Claw Design, which by Plaintiff's own allegations was created in connection with the Contract (*see* Dkt. 1 ¶¶ 23-29), is a trademark "owned and/or controlled by NIKE." The Claw Design therefore is a

NIKE Mark subject to Paragraph 13(b)'s restrictions on third-party unauthorized usage.

The Contract also includes the following choice-of-law and forum-selection provision, which establishes an Oregon court of competent jurisdiction as the only proper venue to hear a suit or action "arising under" the Contract:

> 21. **GOVERNING LAW & JURISDICTION**. This Contract shall be governed by and construed in accordance with the laws of the State of Oregon and except as provided in Paragraph 14, any suit or action arising hereunder shall be filed in a Court of competent jurisdiction within the State of Oregon. CONSULTANT and ATHLETE hereby consent to personal jurisdiction within the State of Oregon and to service of process by registered or certified mail addressed to the respective party as set forth above.

(Welliver Decl., Ex. 1 ¶ 21.) Finally, the Standard Terms' "Entire Contract" clause provides: "This Contract shall constitute the entire understanding between CONSULTANT and NIKE and may not be altered or modified except by a written agreement, signed by both parties." (*Id.*, Ex. 1 ¶ 22.) NIKE and Leonard never entered into a separate written agreement relating to the Claw Design that would deviate from the Contract or any Standard Terms. (Welliver Decl. ¶ 6.)

**B.    Nike's Development of the Claw Design in Connection with the Contract**

Leonard vaguely claims that he "contemplated and conceived of ideas for a personal logo," and that he "refined" such logo "[i]n late December 2011 or January 2012," during the Contract Period. (Dkt. 1 ¶¶ 17-18; *see* Welliver Decl., Ex. 1 at § A.) Leonard omits from his Complaint, however, the image of the logo he "conceived" or "refined." Nor does the Complaint include an image of the Claw Design that NIKE registered with the Copyright Office (Reg. No. VA0002097900).

Instead, the Complaint conflates the rough, hand-drawn design sketch that Leonard "forwarded to NIKE" (Dkt. 1 ¶ 25) and the Claw Design that NIKE developed in connection with the Contract (and subsequently registered for

copyright), referring to both as the same so-called "Leonard Logo."  (*Id.* ¶¶ 18, 39-41, 56.)  These designs are not, in fact, one and the same, and Plaintiff's sweeping use of the term "Leonard Logo" is thus factually inaccurate.  It is also at odds with Leonard's own allegations that NIKE "modified" the design that he forwarded, that NIKE produced multiple rounds of design proposals reflecting such modifications, and that Leonard ultimately "accepted" one such design proposal in June 2014 "*based upon* the Leonard Logo" (but *not* the so-called "Leonard Logo" itself).  (*Id.* ¶¶ 24-29 (emphasis added).)

In reality, the "rough draft" sketch Leonard shared with NIKE for NIKE to create a design in connection with the Contract is markedly different from the Claw Design that NIKE ultimately created and later registered with the Copyright Office. *See* Kiel, George, "The Oral History of Kawhi Leaonard's 'Klaw' Logo," Jun. 5, 2019,[2] NiceKicks.com (attributing the following statements to Plaintiff from an October 2014 interview: "I drew up the rough draft, sent it over and they (Jordan Brand) made it perfect…I give the Jordan Brand team all the credit because I'm no artist at all…They refined it and made it look better than I thought it would ever be, and I'm extremely happy with the final version.") (*available at*: https://www.nicekicks.com/kawhi-leonard-says-claw-logo-idea/) (last visited Jul. 17, 2019).  (*See* Answer and Counterclaims, Ex. C.)  The below side-by-side comparison plainly demonstrates the marked differences between the "rough draft" that Plaintiff *actually* created, and the Claw Design created by NIKE and which is owned by NIKE pursuant to the clear terms of the Contract:

---

[2] This story originally published on October 29, 2014, under the title: "Kawhi Leonard Says 'The Claw' Logo Was His Idea."  The story republished, under its new title, on June 5, 2019, two days after Plaintiff filed the Complaint.  The republished story is otherwise the same as it appeared in the original publication.  A copy of the original article as retrieved from the Internet Archive's "Way Back Machine" is attached as Exhibit D to NIKE's Answer and Counterclaims and is available at: https://web.archive.org/web/20190604095321/https://www.nicekicks.com/kawhi-leonard-says-claw-logo-idea/ (last visited July 17, 2019).

| Leonard's "Rough Draft" | NIKE's Copyrighted Claw Design |
|---|---|
|  |  |

(Welliver Decl. ¶¶ 3-4, Ex. 2.)

### C. The Parties' Dispute

Consistent with the Contract's intellectual property ownership provisions (*see* Welliver Decl., Ex. 1 ¶ 8), NIKE applied for and obtained a U.S. copyright registration for the Claw Design that was created in connection with, and in furtherance of, the Contract. (*Id.* ¶ 5, Ex. 3.) Despite his express agreement that NIKE owned the Claw Design, Leonard filed the complaint seeking the following judicial declarations with respect to the ill-defined "Leonard Logo:" "(i) Leonard is the sole author of the Leonard Logo; (ii) Leonard's use of the Leonard Logo does not infringe any rights of Nike, including without limitation any rights Nike may claim to possess with respect to the Leonard Logo; and (iii) Defendant committed fraud on the Copyright Office in registering the Leonard Logo." (Dkt. 1 ¶56.) Leonard also alleges that he "intends in the near future to use the [Claw Design] on apparel and footwear that he is actively developing and intends to bring to market and to affix on items he intends to distribute in connection with sports camps and charity events, and to affix on other products to be determined." (Dkt. 1 ¶¶ 44, 4.)

In its Answer and Counterclaims filed contemporaneously herewith, NIKE seeks a declaration that NIKE, not Leonard, is the exclusive owner of the registered Claw Design created in connection with the Contract, that Leonard has infringed

NIKE's exclusive rights to reproduce and distribute the copyrighted Claw Design, and that Leonard breached the Contract, for example, by manifesting his intent to commercially exploit the Claw Design through third-party manufactured merchandise without Nike's authorization. Nike also asserts a claim for fraud on the Copyright Office in light of the fact that Leonard applied for and recently obtained a copyright registration for NIKE's Claw Design, falsely naming Leonard as author. (*See* Answer and Counterclaims, ¶¶ 48-92.)

## III.    LEGAL STANDARDS ON A MOTION TO TRANSFER BASED ON A FORUM SELECTION CLAUSE

"A party may move to transfer under 28 U.S.C. § 1404(a) when the venue chosen by the plaintiff is proper but a valid forum selection clause exists." *Goldman v. U.S. Transport & Logistics, LLC*, Case No. 17-cv-00691-BAS-NLS, 2017 WL 6541250, *2 (S.D. Cal. Dec. 20, 2017) (citing *Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 59 (2013)). "[I]nterpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019) (quoting *Graham Tech. Solutions, Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431 (N.D. Cal. 1997)). "Section 1404(a) is merely a codification of the doctrine of forum non conveniens." *Atl. Marine*, 571 U.S. at 60. "[B]ecause both § 1404(a) and the forum non conveniens doctrine from which it derives entail the same balancing-of-interests standard, courts should evaluate a forum-selection clause pointing to a nonfederal forum in the same way that they evaluate a forum-selection clause pointing to a federal forum [through 28 U.S.C. § 1404(a)]." *Atl. Marine*, 571 U.S. 49 at 61.

Generally, "[o]n a motion to dismiss for forum non conveniens, the moving party must establish: '(1) that venue is proper in the transferor district; (2) that the transferee district is one where the action might have been brought; and (3) that transfer will serve the convenience of the parties and witnesses and will promote

the interest of justice.'" *Edwards v. C4 Planning Solutions, LLC*, Case No.: 3:18-cv-02144-BEN-AGS, 2019 WL 1746573, at *2 (S.D. Cal. Apr. 17, 2019) (quoting *Goodyear Tire & Rubber Co. v. McDonnell Douglas Corp.*, 820 F. Supp. 503, 506 (C.D. Cal. 1992)). Under this general standard, "[o]nce venue is found proper in both districts, a court must consider public factors relating to 'the interest of justice' and private factors relating to 'the convenience of the parties and witnesses.'" *Edwards*, 2019 WL 1746573, at *2 (quoting *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).

"When there is a valid forum selection clause, however, '[t]he calculus changes,' and the court must modify its § 1404(a) analysis in three ways." *Edwards*, 2019 WL 1746573, at *2 (quoting *Atl. Marine*, 571 U.S. at 63). "'First, the plaintiff's choice of forum merits no weight,' and the plaintiff, who is defying the forum selection clause, 'bears the burden of establishing that transfer to the forum for which the parties bargained is unwarranted.'" *Edwards*, 2019 WL 1746573, at *2 (quoting *Atl. Marine*, 571 U.S. at 63). "Second, the court should only consider public interest factors, not private ones." *Edwards*, 2019 WL 1746573, at *2; *Color Switch*, 377 F. Supp. 3d at 1083 ("Once a court finds that a forum selection clause is valid, it must balance public interest factors to determine whether dismissal of the action in favor of the other forum would promote justice."). "Finally, 'a § 1404(a) transfer of venue will not carry with it the original venue's choice-of-law rules—a factor that in some circumstances may affect public-interest considerations.'" *Edwards*, 2019 WL 1746573, at *2 (quoting *Atl. Marine*, 571 U.S. at 63).

"The procedural rules for a motion to dismiss under Rule 12(b)(3) for improper venue apply to a motion to dismiss based on a forum selection clause." *Goldman*, 2017 WL 6541250, at *1 n. 1. (citing *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 323–24 (9th Cir. 1996)).[3] Thus, for the purpose of this Motion, "the

---

[3] Even though the Supreme Court in *Atl. Marine* clarified that a motion to transfer

DLA PIPER LLP (US)
SAN DIEGO

WEST\287115235.1

pleadings need not be accepted as true, and the court may consider facts outside of the pleadings." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004) (citation omitted).

## IV. ARGUMENT

### A. The Contract's Forum Selection Clause is Valid and Enforceable

"[T]he Supreme Court has established a strong policy in favor of the enforcement of forum selection clauses." *E. & J. Gallo Winery v. Andina Licores S.A.*, 446 F.3d 984, 992 (9th Cir. 2006) (discussing *Carnival Cruise Lines, Inc. v. Shute*, 499 U.S. 585, 593-94 (1991)). In considering the "threshold question" of "whether the forum selection clause is enforceable," *Questrel, Inc. v. Merriam-Webster, Inc.*, No. SACV 10-1907 AG MLGX, 2011 WL 7637786, at *2 (C.D. Cal. Mar. 23, 2011), the court presumes the validity of the forum selection clause. *Murphy*, 362 F.3d at 1140 (citing *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12 (1972) ("forum selection clauses are presumptively valid")). "As a result of this presumption, when parties have contracted in advance to designate a particular forum for the resolution of disputes, 'a district court should ordinarily transfer the case to the forum specified in that clause.'" *Zako v. Hamilton Co.*, No. 5:15-CV-03162-EJD, 2016 WL 344883, at *3 (N.D. Cal. Jan. 28, 2016) (quoting *Atl. Marine*, 571 U.S. at 62).

"The party seeking to avoid the forum selection clause bears a 'heavy burden of proof.'" *Richards v. Lloyd's of London*, 135 F.3d 1289, 1294 (9th Cir. 1998) (en banc) (quoting *M/S Bremen*, 407 U.S. at 17); *Doe 1 v. AOL LLC*, 552 F.3d 1077,

---

under § 1404(a) is the proper vehicle for enforcing a contractual forum-selection clause, some district courts in the Ninth Circuit have continued to treat motions seeking enforcement of a forum selection clause as motions to dismiss governed by Rule 12(b)(3). *See, e.g., Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1082 (E.D. Cal. 2019). NIKE submits that this action should be transferred to the District of Oregon pursuant to the Contract's forum selection clause regardless of whether this Motion is analyzed under § 1404(a) or Rule 12(b)(3), although it notes that this Court has previously followed *Alt. Marine's* procedural mandates in similar circumstances. *See Goldman*, 2017 WL 6541250, at *2.

1083 (9th Cir. 2009) ("[T]he party seeking to avoid a forum selection clause bears a heavy burden to establish a ground upon which [the court] will conclude the clause is unenforceable.") (internal quotations and citation omitted).  Accordingly, forum selection clauses "should be honored 'absent some compelling and countervailing reason.'"  *Murphy*, 362 F.3d at 1140 (quoting *M/S Bremen*, 407 U.S. at 12.)  Avoiding a forum selection clause thus requires "a strong showing 'that enforcement would be unreasonable and unjust, or that the clause [is] invalid for such reasons as fraud or overreaching.'"  *Edwards*, 2019 WL 1746573 at *2 (quoting *M/S Bremen*., 407 U.S. at 15).

"Federal courts have recognized only three grounds for declining to enforce a forum selection clause: (1) where the inclusion of the clause in the contract was the result of 'fraud or overreaching,' (2) if the party seeking to avoid the clause would be effectively deprived of its day in court in the forum specified in the clause, or (3) if enforcement would contravene a strong public policy of the forum where the suit was filed.'"  *Edwards*, 2019 WL 1746573 at *2 (quoting *Murphy*, 362 F.3d at 1140 (9th Cir. 2003)).

Here, Leonard cannot meet his heavy burden to overcome the forum selection clause's presumptive validity or the strong policy favoring its enforcement.  None of the extraordinary circumstances that would permit a forum selection clause to be set aside are present here.  There is no factual basis for Leonard to assert that the Oregon forum selection clause was entered as the result of fraud or overreaching.  Nor would Leonard be deprived of his day in court if this case proceeds in an Oregon forum.

Moreover, none of the relevant public interest factors favor setting aside the Contract's forum selection clause.  *See Edwards*, 2019 WL 1746573, at *2 (recognizing that when evaluating venue transfer in the face of a valid forum selection clause, the "court should only consider public interest factors, not private ones.").  In circumstances involving a valid forum selection clause, "a court should

only consider public interest factors such as: the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; and the interest in having the trial of a diversity case in a forum that is at home with the law." *Color Switch*, 377 F. Supp. 3d at 1083 (internal quotations and citations omitted). There is no compelling public policy reason for this action to be heard in this District rather than the agreed-upon Oregon forum. To the contrary, the parties' dispute does not bear any greater connection to California than Oregon. Moreover, the parties agreed that the Contract would be "governed by and construed in accordance with" Oregon law (Welliver Decl., Ex. 1 ¶ 21), and their interrelated copyright claims will be governed by the same Ninth Circuit precedent in either District.

The Contract's Oregon forum selection clause is accordingly valid and enforceable, and the only question remaining is whether this action falls within the scope of that provision.

## B. The Parties' Disputes Arise Under the Contract

The Contract's forum selection clause applies to "any suit or action arising hereunder." (Welliver Decl., Ex. 1 ¶21.) Ninth Circuit courts have interpreted the phrase "arising hereunder" to cover claims "relating to the interpretation and performance of the contract." *Edwards*, 2019 WL 1746573, at *4-5 (citation omitted). Moreover, there is "ample Ninth Circuit authority for the proposition that, for purposes of a forum selection clause, a claim arises out of a contract when it is necessary to interpret the contract to resolve the dispute."[4] *Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010).

/////

---

[4] Courts generally treat "arising out of" and "arising under" as synonymous and have cautioned against interpreting either phrase to require "but-for causation." *Omron Healthcare, Inc. v. Maclaren Exports Ltd.*, 28 F.3d 600, 602 (7th Cir. 1994) ("'Arising out of' and 'arising under' are familiar phrases, and courts have resisted the siren call of collapsing them to but-for causation.")

The Ninth Circuit has also held that "forum selection clauses can be equally applicable to contractual and tort causes of action," and that "[w]hether a forum selection clause applies to tort claims depends on whether resolution of the claims relates to interpretation of the contract." *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988). District courts in this Circuit "have applied the *Manetti-Farrow* test to a variety of forum section clauses," including forum selection clauses applying to "disputes under" the contract. *Bagdasarian*, 2010 WL 5154136 at *3 (collecting cases); *see Molloy v. RK Netmedia, Inc.*, No. CV0902614MMMAGRX, 2009 WL 10669608, at *12 (C.D. Cal. Oct. 8, 2009) ("If the applicability of a forum selection clause [to non-contractual claims] is unclear, Ninth Circuit courts consider whether 'the claims alleged in the complaint relate to the interpretation of the contract.'") (quoting *Hebe v. Seagrave Fire Apparatus, LLC*, CV 07-155 AS, 2007 WL 1541741, *3 (D. Or. May 18, 2007)).

Of particular relevance, Ninth Circuit courts have regularly applied the *Manetti-Farrow* test to find that copyright-based claims fall within the scope of forum selection clauses similar to the one set forth in the parties' Contract. *See Graham Technology Solutions, Inc.*, 949 F. Supp. at 1433-34 (applying *Manetti-Farrow* to find that contract's forum selection clause applicable to "all disputes hereunder" governed the action because resolution of plaintiff's copyright claims required interpretation of that contract); *Bagdasarian*, 2010 WL 5154136, at *3 (concluding under *Manetti-Farrow* that forum selection clause directed to "any claim or dispute arising out of this Agreement" covered plaintiff's copyright co-ownership and unjust enrichment claims, because "resolution of each of Plaintiff's claims require[d] interpretation of the Agreement"); *see also Color Switch LLC*, 377 F. Supp. 3d at 1085 ("apply[ing] the *Manetti-Farrow* framework to determine whether resolution of [plaintiff's] copyright and declaratory relief claims require interpretation of the publishing agreement and are thereby within the scope of the publishing agreement's forum selection clause"); *Questrel*, 2011 WL 7637786, at

DLA PIPER LLP (US)
SAN DIEGO

WEST\287115235.1

*3 (C.D. Cal. Mar. 23, 2011) (concluding under *Maenetti-Farrow* that copyright

claim is subject to license agreement's forum selection clause, where "the Court

need[ed] to look at the License Agreement to adjudicate the [claim]").

     *Graham Technologies* is particularly instructive. *Graham* involved a

personal services contract ("PSA") containing a forum selection clause providing

that "[t]he parties agree to submit to the exclusive jurisdiction over all disputes

hereunder to the federal and state courts in the State of New York." *Graham*, 949

F. Supp. at 1429. After the parties' relationship deteriorated, plaintiff filed

copyright infringement, unfair competition, and false advertising claims against

defendant in federal court in the Northern District of California. *Id.* at 1430–31.

The defendant filed a motion to dismiss or to transfer venue, arguing the

appropriate venue for the action was the Southern District of New York pursuant to

the PSA's forum selection clause. *Id*. at 1428. The plaintiff opposed enforcement

of the forum selection clause, contending that plaintiff "has not raised contractual

issues related to the PSA, in its complaint, and that what [was] truly at stake in th[e]

cases [was] the vindication its rights under the Copyright Act." *Id*. at 1431–32.

     The district court in *Graham* rejected this argument and held that the scope

of the forum selection clause covered the plaintiff's copyright claims. *Id.* at 1433.

The court reasoned that the resolution of the copyright claims "ultimately require[d]

interpretation of the PSA," and that such claims "relate[d] to the rights and duties

enumerated in the [contract]." *Id.* Similar to the parties' Contract here that

addresses ownership of intellectual property created in connection with the

Contract, the PSA at issue in *Graham* addressed "ownership of all copyrights to

software developed *in connection with* the [PSA] project." *Id.* Thus, the court

found that resolution of the case depended on whether any of the computer

programs at issue were "developed under…the terms of the PSA." *Id.*

Accordingly, the district court transferred the case to the Southern District of New

York pursuant to the forum-selection clause. *Id.* at 1434–35.

The district court in *Color Switch* recently reached the same conclusion based on similar facts. *See Color Switch,* 377 F. Supp. 3d at 1083-87. There, the court applied the *Manetti-Farrow* framework to conclude that resolution of plaintiff's copyright and declaratory relief claims required interpretation of the parties' publishing agreement and were therefore within the scope of the publishing agreement's Dubai, UAE forum selection clause. *Id.* Seeking to avoid the agreement's forum selection clause, the *Color Switch* plaintiff "argue[d] that resolution of its copyright and declaratory relief claims d[id] not require analyzing the publishing agreement because: (1) its copyright in the [work] predates the publishing agreement…; and (2) its copyright claim is based on its creation and authorship of the [work]." *Id.* at 1085. The district court rejected these arguments, reasoning that plaintiff's copyright and declaratory judgment claims turned on ownership issues that "necessarily require[d] analyzing the publishing agreement to determine whether [an employee] was, in fact, hired on a 'work-for-hire' basis" to author the work at issue. *Id* at 1085*; see also Bagdasarian* 2010 WL 5154136, at *3 (forum selection clause applying to "any claim or dispute arising out of this Agreement" covered copyright co-ownership and unjust enrichment claims, because "resolution of [those] claims require[d] interpretation of the Agreement").

This motion warrants the same outcome as those described above. Applying the governing *Manetti-Farrow* framework, each of Leonard's copyright ownership, non-infringement, and fraud on the Copyright Office claims "arise under" the Contract.[5] Because the Contract clearly and unambiguously establishes that NIKE is the exclusive owner of any design or logo created "in connection with this Contract," either by NIKE *or* Leonard (*see* Welliver Decl., Ex. 1 ¶ 8), resolution of

---

[5] That Leonard's copyright-based claims are styled as declaratory judgment claims in the Complaint does not alter the analysis. *See Color Switch*, 377 F. Supp. 3d at 1084 ("[C]laims for declaratory relief 'do not fall outside of the forum-selection clause simply because they sound in equity.'") (quoting *Glob. Quality Foods, Inc. v. Van Hoekelen Greenhouses, Inc.*, No. 16-CV-00920-LB, 2016 WL 4259126, at *7 (N.D. Cal. Aug. 12, 2016)).

1  the parties' copyright dispute over the Claw Design requires interpretation of the

2  Contract, and relates to the parties' respective rights and duties thereunder.  And

3  even though Leonard cannot credibly dispute that NIKE's registered Claw Design

4  was developed "in connection with [the] Contract," should he do so, resolution of

5  the parties' competing intellectual property ownership claims will still require

6  interpretation and application of this provision to the facts.  *See Questrel, Inc.*, 2011

7  WL 7637786, at *3 ("This claim about whether a certain action was taken within

8  the scope of the License Agreement is 'in connection with' the terms of that

9  Agreement.  If the Court were unable to consider the terms and scope of the

10 License Agreement, the claim would be rendered incomprehensible.")  Thus, under

11 governing Ninth Circuit authority, all of Leonard's claims are covered by the

12 Contract's Oregon forum selection clause.

13        However, it is not just Leonard's claims that arise under the Contract.

14 NIKE's affirmative defenses and counterclaims reinforce that this entire action

15 "arises under" the Contract.  *See, e.g.., Dvorak v. Moody's Analytics Inc*., No. C 10-

16 03657 JSW, 2010 WL 11636243, at *2 (N.D. Cal. Oct. 5, 2010) ("[T]he fact that

17 Moody's cross-claims require adjudication of the Release Agreement necessarily

18 implicates the forum selection clause of that contract.")  NIKE's copyright

19 ownership and infringement counts relate to the parties' rights and obligations

20 under the Contract, and require interpretation of the Contract's intellectual property

21 ownership provisions, for the same reasons discussed above with respect to

22 Leonard's copyright claims.  Moreover, NIKE asserts breach of contract against

23 Leonard for violating his representations and warranties set forth in Paragraph

24 13(b), for example, in view of his manifest intention to commercially exploit the

25 Claw Design on non-NIKE merchandise.  (Dkt. 1 ¶¶ 4, 44.)[6]  Thus, this entire

26 ───────────────
   [6] By filing its answer and counterclaims before this Court, NIKE has *not* waived its
27 defense of improper venue. *Hillis v. Heineman*, 626 F.3d 1014, 1016-18 (9th Cir.
   2010) ("We hold that the filing of a counterclaim, permissive or otherwise, does not
28 constitute a waiver of a defense of improper venue asserted in an answer.");
   *Ponomarenko v. Shapiro*, 287 F. Supp. 3d 816, 836(N.D. Cal. 2018) ("[I]t actually

action "arises under" the Contract under Ninth Circuit precedent and falls squarely within the Contract's Oregon forum-selection clause.

## V. CONCLUSION

For the foregoing reasons, each of the parties' claims in this action "arise under" the Contract and thus fall within the scope of the Contract's valid and enforceable forum selection clause. Accordingly, NIKE's motion to transfer this action to the District of Oregon should be granted.

Dated: July 17, 2019

**DLA PIPER LLP (US)**

*/s/ Tamar Y. Duvdevani*
Stanley J. Panikowski
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

Of Counsel:

Tamar Y. Duvdevani (*pro hac vice*)
Matthew N. Ganas (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

*Attorneys for Defendant NIKE, Inc.*

would have been *inappropriate* under Supreme Court precedent for Shapiro to file a motion to dismiss or otherwise challenge venue as improper, and he has not waived his right to enforce the forum selection clause through a § 1404(a) motion [because he filed an answer and counterclaims]." (emphasis in original).