SULLIVAN & WORCESTER LLP
Peter R. Ginsberg (Bar No. 1831221)
prginsberg@sullivanlaw.com
Mitchell C. Stein (Bar No. 2250546) *(pro hac vice pending)*
mstein@sullivanlaw.com
1633 Broadway
New York, NY 10019
Tel: 212.660.3000
Fax: 212.660.3001

Nathaniel R.B. Koslof (Bar No. 691096) *(pro hac vice pending)*
nkoslof@sullivanlaw.com
One Post Office Square
Boston, MA 02109
Tel.: 617.338.2800
Fax.: 713.338.2880

DUCKOR SPRADLING METZGER AND WYNNE
Scott L. Metzger (Bar No. 89718)
metzger@dsmwlaw.com
William Patrick Keith (Bar No. 270587)
keith@dsmw.com
101 W. Broadway, Suite 1700
San Diego, CA 92101
Tel.: 619.209.3000
Fax: 619.209.3042

*Attorneys for Plaintiff Kawhi Leonard*

## UNITED STATED DISTRICT COURT
## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWHI LEONARD,<br><br>        Plaintiff,<br><br>    v.<br><br>NIKE, INC.,<br><br>        Defendant. | Case No. 3:19-cv-01035-BAS-BGS<br><br>**PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**<br><br>Date: September 9, 2019<br>Courtroom: 4B<br>Judge: The Hon. Cynthia A. Bashant |

# **TABLE OF CONTENTS**

OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE ........2

INTRODUCTION ......................................................................................2

STATEMENT OF FACTS ..........................................................................3

ARGUMENT ............................................................................................10

    1.    Legal Standard. ...............................................................10

    2.    The Forum Selection Clause Does Not Apply To Plaintiff's
           Claim For Declaratory Judgment Premised On United States
           Copyright Law Because Plaintiff Created The Leonard Logo
           Prior To Execution Of The Nike Agreement. ...............................11

    3.    The Forum Selection Clause Cannot Be Retroactively
           Applied. ..........................................................................................15

    4.    Defendant's Counterclaims Are Irrelevant. ...................................18

    5.    Balance Of The Equities Favors This Court's Retention Of
           This Case. .......................................................................................20

# **TABLE OF AUTHORITIES**

**Cases**                                                             **Page(s)**

*Astor Holdings, Inc. v. Roski*,
No. 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758 (S.D.N.Y. Jan. 15, 2002)
................................................................................................. 10

*Bancroft Life & Casualty ICC, Ltd. v. Scolari* ,
CASE NO. C11-5017RBL, 2011 U.S. Dist. LEXIS 136985 (W.D. Wash. Nov. 28, 2011) ............................................................................... 16

*Cape Flattery Ltd. v. Titan Maritime, LLC*,
647 F.3d 914 (9th Cir. 2011) .................................................. 12

*Color Switch LLC v. Fortafy Games DMCC*,
377 F. Supp. 3d 1075 (E.D. Cal. 2019) .................................. 17, 18, 22

*Doe 1 v. AOL LLC*,
552 F.3d 1077 (9th Cir. 2009) ................................................ 13

*Dvorak v. Moody's Analytics Inc.*,
No. C 10-03657, 2010 WL 11636243 (N.D. Cal. ?MONTH? ?DAY?, 2010) ..... 19

*Holland America Line, Inc. v. Wartsila North America, Inc.*,
485 F.3d 450 (9th Cir. 2007) .................................................. 10

*Holmes Grp., Inc. v. Vornado Air Circulation Systems*,
535 U.S. 826 (2002) ......................................................... 18-19

*Jones v. GNC Franchising, Inc.*,
211 F.3d 495 (9th Cir. 2000) .......................................... 10, 20

*Lueck v. Sundstrand Corp.*,
236 F.3d 1137, 1145 (9th Cir. 2001) ...................................... 21

*Manetti-Farrow, Inc. v. Gucci America, Inc.*,
858 F.2d 509 (9th Cir. 1988) ................................................ 16

*Mediterranean Enterprises v. Ssangyong Corp.*,
708 F.2d 1458 (9th Cir. 1983) .............................................. 12

*Murphy v. Schneider National, Inc.*,
362 F.3d 1133 (9th Cir. 2004) ...................................... 10, 14, 15

*Petersen v. Boeing Co.*,
    715 F.3d 276 (9th Cir. 2013) ................................................................ 14

*Ponomarenko v. Shapiro*,
    287 F. Supp. 3d 816 (N.D. Cal. 2018) .................................................. 11

*Ryan v. Microsoft Corp.*,
    No. 14-CV-04634-LHK, 2015 U.S. Dist. LEXIS 47753 (N.D. Cal. Apr. 10,
    2015) ............................................................................................ 11, 12, 17

*South County Proffessional Park, Ltd. v. Orchard Supply Co.*,
    No. 5:14-cv-02348-PSG, 2014 U.S. Dist. LEXIS 100064 (N.D. Cal. July 21,
    2014) ...................................................................................................... 13

*Security Watch, Inc. v. Sentinel Systems*,
    176 F.3d 369 (6th Cir. 1999) ................................................................ 16

*Sleepy Lagoon, Ltd. v. Tower Group, Inc.*,
    809 F. Supp. 2d 1300 (N.D. Okla. 2011) ............................................. 10

*Stewart Organizatai., Inc. v. Ricoh Corp.*,
    487 U.S. 22 (1988) ............................................................................... 10

*Thomas v. Carnival Corp.*,
    573 F.3d 1113 (11th Cir. 2009) ............................................................ 16

*TradeComet.com LLC v. Google, Inc.*,
    435 F. App'x 31 (2d Cir. 2011) ............................................................ 16

*Tuazon v. R.J. Reynolds Tobacco Co.*,
    433 F.3d 1163, 1180 (9th Cir. 2006) .................................................... 20

*In re VeriSign, Inc., Derivative Litig.*,
    531 F. Supp. 2d 1173 (N.D. Cal. 2007) ............................................... 17

*Wachovia Bank, N.A. v. Schmidt*,
    445 F.3d 762 (4th Cir. 2006) ................................................................ 16

**Statutes**

17 U.S.C. § 101 ................................................................................... 9, 18

17 U.S.C. § 201(a) .............................................................................. 9, 18

28 U.S.C. § 1404(a) .......................................................................... 10, 20

28 U.S.C. § 1454 ...................................................................................... 19

## OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE

Plaintiff Kawhi Leonard ("Plaintiff" or "Leonard") hereby submits this opposition (the "Opposition") to the motion to transfer venue (the "Motion to Transfer Venue") [Dkt. No. 17] filed by Defendant Nike, Inc. ("Defendant" or "Nike"), in which Defendant seeks to transfer this action to the District of Oregon, based on a forum selection clause (the "Forum Selection Clause") contained in an agreement between, *inter alia*, Plaintiff and Defendant dated October 26, 2011 (the "Nike Agreement").[1] For the reasons set forth herein, the Motion to Transfer Venue should be denied.

## INTRODUCTION

In Defendant's memorandum in support of its Motion to Transfer Venue, Defendant fails to appreciate the one, simple fact that is dispositive of this Motion to Transfer Venue: **Plaintiff's claims predate and do not in any way depend on the Nike Agreement.** As asserted throughout Plaintiff's *Complaint for Declaratory Relief* filed June 3, 2019 (the "Complaint") [Dkt. No. 1], Plaintiff created the "Leonard Logo" while attending San Diego State University ("SDSU") from 2009 through 2011, **prior to** the initial term of the Nike Agreement. Accordingly, as explained herein, the Forum Selection Clause contained in the Nike Agreement simply does not apply.

---

[1] The Nike Agreement, in redacted form, is attached as Exhibit 1 to the *Declaration of Dinusha Welliver in Support of Nike, Inc.'s Motion to Transfer Venue* [Dkt. No. 17.2].

Moreover, Nike has failed to present *any* evidence, let alone sufficient evidence, to disturb Plaintiff's choice of venue. To the contrary, the balance of the equities tips decidedly in favor of allowing this case to proceed in this Court. California is where the key events underlying the allegations of the Complaint occurred (*e.g.*, where Plaintiff created the Leonard Logo while attending SDSU), and is where a number of the witnesses to the key events reside (*e.g.*, Plaintiff's coaches, teammates, family, people who assisted Plaintiff with the design, and Plaintiff himself). In contrast, Defendant is a multinational corporation with substantial operations throughout Southern California (and the entire world). Defendant interacted with Plaintiff for the most part in Texas, where Plaintiff was employed during his relationship with Defendant, and in Southern California, where Plaintiff spent significant time in the off-season, and certainly not in Oregon. Defendant will experience <u>absolutely no harm whatsoever</u> if forced to defend this suit in California. Defendant's motion should be denied.

## STATEMENT OF FACTS[2]

1. As described in Plaintiff's Complaint, this case concerns Defendant's attempt to block Plaintiff's use of the Leonard Logo, a highly-personal, unique logo conceived of and created by Plaintiff while Plaintiff was still in college at SDSU.

---

[2] The well-pled, uncontradicted allegations of the Complaint are assumed to be true for purposes of this motion, and Plaintiff is entitled to all inferences in its favor. *See infra* at pp. 10, 14-15.

3

2.      Leonard is an American professional basketball player currently playing for the Los Angeles Clippers of the NBA.  After graduating High School, Leonard went on to play basketball for SDSU before entering the 2011 NBA draft.  Complaint at ¶¶12-13.

3.      Leonard, a two-time NBA champion and two-time NBA Finals MVP, is known for his extremely large hands.  Throughout his career, spectators have noticed Leonard's large hands and they are often described as contributing to his success as a player.  Leonard has worn jersey number "2" through much of his career and, at times before that, the number "22."  *Id.* at ¶¶ 15-16.

4.      Since at least his college years at SDSU, Leonard contemplated and conceived of ideas for a personal logo which would be unique to him and reflect something meaningful relating to his own image.  During that time, Leonard created the Leonard Logo.  *Id.* at ¶ 17.

5.      On October 26, 2011, Nike and Leonard signed the Nike Agreement.  The Nike Agreement term was from October 1, 2011 to September 30, 2014, and thereafter extended in a series of agreements finally expiring on September 30, 2018.  *Id.* at ¶¶ 20-21.

6.      **Defendant drafted the Nike Agreement**, including the Forum Selection Clause at issued.  Paragraph 21 of the Nike Agreement, the Forum Selection Clause (on which Defendant relies for this Motion to Transfer Venue), provides as follows:

4

> 21. GOVERNING LAW & JURISDICTION. This
> contract shall be governed by and construed in accordance
> with the laws of the State of Oregon and except as provided
> in Paragraph 14, any suit or action **arising hereunder** shall
> be filed in a Court of competent jurisdiction within the
> State of Oregon. CONSULTANT and ATHLETE hereby
> consent to personal jurisdiction within the State of Oregon
> and to service of process by registered or certified mail
> addressed to the respective party as set forth above.

Nike Agreement at ¶ 21.

7.      At some point during the term of the Nike Agreement, Nike began discussions with Leonard about using a unique logo to affix to merchandise to be sold under the Nike Agreement. Nike provided to Leonard its ideas for a logo, including modifications to the logo that Leonard already had designed and created, the Leonard Logo. Leonard for the most part rejected Nike's concepts and, instead, on or about April 14, 2014, Leonard said he would permit Nike to use the Leonard Logo during the term of the Nike Agreement (under his supervision and control). Complaint at ¶¶ 23-25.

8.      As described above, Plaintiff had created the Leonard Logo while attending college at SDSU, prior to the initial term of the Nike Agreement. Plaintiff then refined the Leonard Logo several times, including in late December 2011 or January 2012. The version of the Leonard Logo that Plaintiff offered for use to Defendant on or about April 14, 2014 was his Leonard Logo as refined in late December 2011 or January 2012. *Id.* at ¶¶ 18, 25.

5

9.    Thereafter, Nike reviewed the Leonard Logo, modified it, and returned pro formas to Leonard in the Spring 2014.  Leonard rejected those proposals as well.  *Id.* at ¶¶ 26-27.

10.    In early Summer 2014, Nike provided additional proposals to Leonard using the Leonard Logo.  Leonard accepted one of the June 2014 proposals and granted Nike permission to affix that version of the Leonard Logo on Nike merchandise during the term of the Nike Agreement.  *Id.* at ¶¶ 28-29.

11.    Nike confirmed that the agreed-upon logo had not previously been registered by any third-party.  *Id.* at ¶ 30.

12.    At the same time, Leonard's representatives confirmed that Leonard continued to own the Leonard Logo.  *Id.* at ¶ 31.

13.    Leonard never transferred ownership rights in the Leonard Logo to Nike -- conversely, as the many communications, including text and e-mails show, Leonard licensed Nike to use the Leonard Logo for their mutual benefit and for the specific purpose of effectuating the Nike Agreement for the term of the contract.  *Id.* at ¶ 32; *see also* Nike Agreement at ¶ 3.

14.    Indeed, Nike representatives recognized Leonard's rights to the Leonard Logo -- referring to it as "Kawhi's logo" in written communications with Leonard and his representatives.  Complaint at ¶ 33.

15.    Leonard, with Nike's knowledge and without dispute or challenge from Nike, continued to use the Leonard Logo on non-Nike goods, including

6

apparel and merchandise used for basketball camps, appearances and charity events, even while Nike was affixing Leonard's Logo to Nike merchandise. *Id.* at ¶ 34.

16.     Consistent with Nike's position as a party without any ownership in the Leonard Logo, Nike refused to act several times when Leonard's representatives, upon learning that third-parties were using the Leonard Logo without authorization, reached out to Nike for assistance and advice in halting the unauthorized use. *Id.* at ¶ 35.

17.     Without Leonard's knowledge or consent, Nike filed an application with the United States Copyright Office to register the "Kawhi Leonard Logo." *Id.* at ¶ 36.

18.     On or about May 11, 2017, the application was granted and the Leonard Logo was given Registration No. VA0002097900. On the application, Nike claimed authorship of the Leonard Logo and rights and permissions to the Leonard Logo. Further, Nike claimed that the Leonard Logo was authored in 2014 and first published on October 28, 2014. *Id.* at ¶¶ 37-39.

19.     Nike's claim to ownership of the Leonard Logo is premised on the false representations Nike made in its copyright application, including that it authored the logo. Nike never notified Leonard of its intention to attempt to copyright the Leonard Logo nor did it notify Leonard when the copyright was awarded. *Id.* at ¶¶ 40-41.

7

20. On November 9, 2017, Leonard applied for, and subsequently received registration of, two trademarks in three different categories of registration consisting of, and inspired by, Leonard's creation of the Leonard Logo, one an image of his hand, his initials and jersey number and a second logo based upon letters and numbers corresponding to Leonard's initials and jersey number (the "Leonard Trademarks"). *Id.* at ¶ 42.

21. As set forth above, Leonard had been developing and authored the Leonard Logo on his own, independent of Nike, and continued to use the Leonard Logo for non-Nike products while also permitting Nike to borrow the Leonard Logo in his joint pursuit with Nike to merchandise products within the scope of the Nike Agreement and for the term of the Nike Agreement. *Id.* at ¶ 43.

22. Leonard intends in the near future to use the Leonard Logo on apparel and footwear that he is actively developing and intends to bring to market and to affix on items he intends to distribute in connection with sports camps and charity events, and to affix on other products to be determined. Use of the Leonard Logo is vital to Leonard's ability to continue to grow his brand and expand both his commercial reach and influence with charities with which he is involved. *Id.* at ¶ 44.

23. On December 21, 2018, John Matterazzo, Nike's VP & Global Counsel for Sports Marketing, wrote to one of Leonard's representatives, stating

that Nike owns the Leonard Logo pursuant to the Nike Agreement and Nike's copyright registration of the Leonard Logo. Matterazzo demanded that Leonard cease using the Leonard Logo on non-Nike merchandise. *Id.* at ¶ 45.

24.     On January 30, 2019, Leonard's counsel responded by requesting that Nike rescind its copyrights in the Leonard Logo and informing Nike that Leonard intended to continue to use the Leonard Logo and Leonard Trademarks on non-Nike merchandise and might affix the Leonard Logo and Leonard Trademarks to the shoes he would be wearing as a player for the Raptors. *Id.* at ¶ 46.

25.     On March 11, 2019, Nike responded that it owns all intellectual property rights in the Leonard Logo and demanded that Leonard immediately cease and desist from what Nike claimed was the unauthorized use of the Leonard Logo. *Id.* at ¶ 47.

26.     On June 3, 2019, Plaintiff filed the instant Complaint, seeking a declaration pursuant to, *inter alia*, 17 U.S.C. §§ 101 and 201(a) that Plaintiff is the sole author of the Leonard Logo. *Id.* at pp. 8-9.

27.     On June 3, 2019, Plaintiff applied to register its copyright in the Leonard Logo with the US Copyright Office. On its application, Plaintiff disclosed the prior Nike copyright registration. Approximately ten days later, the US Copyright Office registered Plaintiff's copyright under registration number VA 2-153-704.

9

# ARGUMENT

## 1.    *Legal Standard.*

Under 28 U.S.C. § 1404(a), the district court has discretion "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498 (9th Cir. 2000); *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988). In evaluating a motion to transfer venue, "the trial court must draw all reasonable inferences in favor of the non-moving party and resolve all factual conflicts in favor of the non-moving party." *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1138 (9th Cir. 2004); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 455 (9th Cir. 2007) ("[T]rial court must draw all reasonable inferences in favor of the nonmoving party"); *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011) ("When reviewing a motion to transfer venue under § 1404, a court may consider evidence outside of the pleadings **but must draw all reasonable inferences and resolve factual conflicts in favor of the non-moving party**") (emphasis added); *Astor Holdings, Inc. v. Roski*, No. 01 Civ. 1905 (GEL), 2002 U.S. Dist. LEXIS 758, at *19-20 (S.D.N.Y. Jan. 15, 2002) ("For the purposes of deciding Defendants' motion to dismiss for improper venue or, in the alternative, to transfer the case to another judicial district, the Court must accept all of the uncontroverted allegations in Plaintiffs' complaint as true and construe all reasonable inferences in plaintiffs' favor").

Here, Defendant's Motion to Transfer Venue is based solely on the existence of the Forum Selection Clause.  Defendant has submitted **no evidence whatsoever** with respect to any of the "public" or "private" factors typically considered by courts in motions to transfer.[3]

Before testing whether a forum selection clause is **enforceable** on a motion to transfer, a court must first find that the clause is **applicable** to the dispute. *See, e.g.*, *Ryan v. Microsoft Corp.*, No. 14-CV-04634-LHK, 2015 U.S. Dist. LEXIS 47753, at *20 (N.D. Cal. Apr. 10, 2015) ("In sum, the Court concludes that the forum selection clauses in Plaintiffs' employment agreements **do not apply** to the instant litigation as Plaintiffs' claims do not 'arise out of' the employment agreements").  Defendant bears the burden to show that transfer is proper.  *Ponomarenko v. Shapiro*, 287 F.Supp.3d 816, 834 (N.D. Cal. 2018) ("[W]here the forum selection clause does not cover the parties' dispute, the burden of showing why transfer is warranted remains with the defendant. . .").  As shown below, the Nike Agreement's Forum Selection Clause does not apply.

> **2.** ***The Forum Selection Clause Does Not Apply To Plaintiff's Claim For Declaratory Judgment Premised On United States Copyright Law Because Plaintiff Created The Leonard Logo Prior To Execution Of The Nike Agreement.***

The Forum Selection Clause upon which Nike relies applies only to claims "arising []under" the Nike Agreement:

---

[3] The relevant public and private factors are discussed *infra* at pp. 20-23.

> 21.  GOVERNING LAW & JURISDICTION.  This
> contract shall be governed by and construed in accordance
> with the laws of the State of Oregon and except as provided
> in Paragraph 14, any suit or action **arising hereunder** shall
> be filed in a Court of competent jurisdiction within the
> State of Oregon.  CONSULTANT and ATHLETE hereby
> consent to personal jurisdiction within the State of Oregon
> and to service of process by registered or certified mail
> addressed to the respective party as set forth above.

Nike Agreement at ¶ 21 (emphasis added).  Based on the way this clause is

phrased, it must be construed narrowly.  *See, e.g.*, *Ryan*, 2015 U.S. Dist. LEXIS

47753, at *16-17 ("As a general matter, forum selection clauses covering

disputes 'arising out of' a contract are narrower than those covering disputes

'arising out of or relating to' a contract.  **Where a forum selection clause covers**

**only disputes 'arising out of' a contract, the Ninth Circuit has held that the**

**forum selection clause should be 'narrowly construed.**'") (internal citations

omitted); *see also Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th

Cir. 2011) (holding that forum-selection clauses covering disputes "arising out

of" a particular agreement must be interpreted narrowly); *Mediterranean Enters.,*

*Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983) (holding that an

arbitration clause covering disputes "arising under" an agreement, but omitting

reference to claims "relating to" an agreement, covered only those disputes

"relating to the interpretation and performance of the contract itself").

    The need for a narrow interpretation of the Forum Selection Clause is

underscored by the fact that **Defendant drafted the Nike Agreement**, including

12

the Forum Selection Clause.  *See, e.g.*, *S. Cty. Prof'l Park, Ltd. v. Orchard Supply Co. LLC*, No. 5:14-cv-02348-PSG, 2014 U.S. Dist. LEXIS 100064, at *2 (N.D. Cal. July 21, 2014) ("When considering forum selection clauses, the 'fundamental rule of contract interpretation' applies: **ambiguous language is construed 'against the drafter of the contract**'") (emphasis added), citing *Hunt Wesson Foods, Inc. v. Supreme Oil Co.*, 817 F.2d 75, 78 (9th Cir. 1987) ("Another fundamental rule of contract interpretation is that where language is ambiguous the court should construe the language against the drafter of the contract"); *see also Doe 1 v. AOL LLC*, 552 F.3d 1077, 1082 n.10 (9th Cir. 2009) ("[W]e would construe the contract against [defendant] as the drafter and **adopt plaintiffs' reasonable interpretation** of the phrase . . . ") (emphasis added).

Plaintiff's claim does not arise under the Nike Agreement.  It arises under US copyright law, and is based on conduct that occurred when Plaintiff created the Leonard Logo while attending SDSU from 2009 through 2011, **prior to** the initial term of the Nike Agreement.  In particular, Plaintiff's allegations in the Complaint include the following:

> 1.  **In 2011, just after being drafted to the National Basketball Association (the "NBA"), Kawhi Leonard authored a unique logo** that included elements that were meaningful and unique to him.  Leonard traced his notably large hand, and, inside the hand, drew stylized versions of his initials "KL" and the number that he had worn for much of his career, "2."**The drawing Leonard authored was an extension and continuation of drawings he had been creating since early in his college career.**

15

> 17.  **Since at least his college years**, Leonard contemplated and conceived of ideas for a personal logo which would be unique to him and reflect something meaningful relating to his image.
>
> 18.  In late December 2011 or January 2012, **Leonard refined a logo he had been creating for several years** that encompassed his large and powerful hands, his initials and his jersey number (the "Leonard Logo").

Complaint at ¶¶ 1, 17-18 (emphasis added).  Plaintiff is more than prepared to support these allegations with specific evidence at Trial.  Yet for purposes of this Motion to Transfer Venue, the Court "must draw all reasonable inferences and resolve all factual conflicts in favor of" Plaintiff.  *Murphy*, 362 F.3d at 1138 and 1143 ("It does not matter . . . that there are contrary facts submitted by the moving party.  Absent an evidentiary hearing to resolve the factual contest . . . **the district court [must] accept [the non-moving party's] sworn factual assertions as true.**") (emphasis added); *see also Petersen v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013) (holding that a district court abused its discretion when, without an evidentiary hearing, it dismissed a lawsuit pursuant to Rule 12(b)(3) wherein plaintiff employee offered evidence sufficient to support its assertion that the forum selection clause should not be enforced in light of movant defendant employer's fraudulent conduct in inducing plaintiff to assent to the clause).

The issue in dispute here is ownership of the US copyright in the Leonard Logo under US Copyright law.  The outcome of that issue does not depend on the

14

Nike Agreement, as the logo was created <u>prior to</u> the Nike Agreement. Thus, the

Court should accept Plaintiff's "reasonable interpretation" of the Forum Selection

Clause and find that Plaintiff's claim, which predates the execution of the Nike

Agreement, could not possibly "arise[] [t]hereunder." Nike Agreement at ¶ 21.

Thus, the Forum Selection Clause does not apply.

   Moreover, Defendant concedes that it has no claim to what it disparagingly

describes as Plaintiff's "rough draft"[4] logo (*i.e.*, the version of the Leonard Logo

that Plaintiff created and began refining **prior to** the term of the Nike Agreement

and ultimately shared with Defendant in 2014). *See* Motion to Transfer at p. 2

("…NIKE does not assert ownership of Leonard's design above. As far as Nike

is concerned, Leonard is free to use it"). This acknowledgment by Defendant

should end the inquiry. Drawing all reasonable inferences and resolving all

factual conflicts in Plaintiff's favor, this Court should allow Plaintiff's

California-based allegations to guide its resolution of this Motion to Transfer

Venue. *See, e.g.*, *Murphy*, 362 F.3d at 1137-38.

### 3. *The Forum Selection Clause Cannot Be Retroactively Applied.*

   Under clearly established federal law, forum selection clauses cannot be

applied retroactively to dictate the forum for resolving disputes **based on**

**allegations that predate the contract**. This is especially true where the forum

---

[4]Counterclaim at ¶ 2.

selection clause itself limits its applicability to actions 'arising [t]hereunder.'

*See, e.g.*, *Bancroft Life & Cas. ICC, Ltd. v. Scolari*, No. C11-5017RBL, 2011 U.S. Dist. LEXIS 136985 (W.D. Wash. Nov. 28, 2011) (declining to grant plaintiff's Rule 12(b)(3) motion to dismiss defendant's counterclaims when the language of the forum selection clause in question did not encompass the alleged pre-contractual misconduct); *see also TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31, 34 (2d Cir. 2011) ("Courts construing arbitration clauses have refused to subject claims to arbitration where the claims arise from or relate to conduct occurring prior to the effective date of the agreement, and where the clause is limited to claims under 'this Agreement'"); *Thomas v. Carnival Corp.*, 573 F.3d 1113, 1117-19 (11th Cir. 2009) (refusing to apply arbitration clause 'retroactively' where the clause applied to '[a]ny and all disputes arising out of or in connection with this Agreement'); *Wachovia Bank N.A. v. Schmidt*, 445 F.3d 762, 767-69 (4th Cir. 2006) (same); *Sec. Watch, Inc. v. Sentinel Sys., Inc.*, 176 F.3d 369, 372 (6th Cir. 1999) (finding arbitration clause inapplicable to disputes under previous agreements where clause applied to all claims "arising out of or relating to the [p]roducts furnished pursuant to this Agreement or acts or omissions . . . under this Agreement").[5]

---

[5] As the Ninth Circuit explained in *Manetti-Farrow, Inc. v. Gucci Am., Inc*, 858 F.2d 509, 514 n.4 (9th Cir. 1988), "an agreement to arbitrate is actually a specialized forum selection clause," and the analysis of one is therefore applicable to the analysis of the other.

16

The only instances where retroactive application of forum selection clauses may be permissible are where the clause itself is "extremely broad" and worded so as explicitly to contemplate such pre-agreement conduct. *See, e.g.*, *In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173 (N.D. Cal. 2007) (finding that an arbitration provision in a contract was "extremely broad" and worded so as to cover services beyond those explicitly described by the agreement).

Here, however, the Forum Selection Clause is narrowly crafted and expressly limited to claims "arising []under" the Nike Agreement. Nike Agreement at ¶ 21. This clause is not drafted so broadly as to warrant an exception from the typical forward-facing application of such clauses. *See Ryan*, 2015 U.S. Dist. LEXIS 47753, at *16-17 ("Where a forum selection clause covers only disputes 'arising out of' a contract, the Ninth Circuit has held that the forum selection clause should be 'narrowly construed'"). Moreover, ownership of the copyright in the Leonard Logo is governed by US copyright law, not the Nike Agreement.

Defendant's reliance on *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1086 (E.D. Cal. 2019), is readily distinguishable. In *Color Switch*, the plaintiff brought four claims against the defendant. Importantly, **one of plaintiff's four claims was for breach of contract.** *Id.* at *6. The same contract that plaintiff claimed was breached by defendant contained the forum selection clause defendant sought to enforce. When defendant filed a motion to

17

dismiss premised on the forum selection clause in the contract, the Court held, understandably, that plaintiff's claims (including its claim for breach of contract) were "inextricably linked to" the contract. *Id.* at *18. In granting the motion to dismiss, the Court held that plaintiff "chose to allege claims that require interpreting the [contract containing the forum selection clause] to resolve; [thus, plaintiff] cannot now evade the consequences of that decision by asking the court to ignore those claims." *Id.* at *16.

By contrast, Plaintiff has <u>not</u> asserted a claim for breach of contract in the instant case—just a single claim for a declaration pursuant to, *inter alia*, 17 U.S.C. §§ 101 and 201(a) that Plaintiff is the sole author of the Leonard Logo. This claim plainly is not "inextricably linked" to the Nike Agreement, nor does it "require interpreting" the Nike Agreement for its resolution. It is a claim based on US copyright law premised on conduct that predated execution of the Nike Agreement. Thus, the Forum Selection Clause does not apply.

### 4. Defendant's Counterclaims Are Irrelevant.

Defendant's half-hearted suggestion that the Forum Selection Clause applies because it is implicated by Defendant's counterclaims is both self-serving and without support. Except in limited circumstances prescribed by statute, a defendant cannot unilaterally disrupt a plaintiff's choice of forum by creatively asserting counterclaims that seek to circumvent Plaintiff's right to select the forum for asserting his claims. *See, e.g.*, *Holmes Grp., Inc. v. Vornado Air*

18

*Circulation Sys.*, 535 U.S. 826, 831 (2002) ("[A] counterclaim -- which appears as part of the defendant's answer, not as part of the plaintiff's complaint -- cannot serve as the basis for "arising under" jurisdiction"); *but see* 28 U.S.C. § 1454 (specifically conferring federal jurisdiction to a defendants' counterclaims that arise under the Copyright Act").

The one case Defendant cites for the proposition that Defendant, by the way it crafts it counterclaims, can defeat Plaintiff's right to select the forum for litigating his claims, *Dvorak v. Moody's Analytics Inc.*, No. C 10-03657, 2010 WL 11636243 (N.D. Cal. 2010), is readily distinguishable. In *Dvorak*, a disgruntled former employee sued his former employer in California alleging breach of contract. *Id.* at *1. The employer then filed a motion to transfer venue to New York based on a provision in its severance agreement with the employee. *Id.* In finding the forum selection clause contained in the severance agreement both applicable and enforceable, the Court reasoned that it was immaterial that the employee did not frame his suit on the severance agreement because "the contractual construction of the parties' employment relationship and understanding of the waiver in the [settlement agreement] [were] essential for resolution of the parties' dispute." *Id.* at 3. The employee's claims necessarily implicated interpretation of the contract containing the forum selection clause. Here, however, because Plaintiff's claims arise under US copyright law and predate the Nike Agreement, no such review of the Nike Agreement is required

(especially at this preliminary stage where the Plaintiff is entitled to all

reasonable inferences).

### 5. Balance Of The Equities Favors This Court's Retention Of This Case.

Finally, a balance of the equities tips decidedly in favor of allowing this

case to proceed in this District. Because the Forum Selection Clause does not

apply, *Defendant* bears the burden on this Motion to Transfer Venue to convince

the Court that the "private" and "public" interest factors common to a motion to

transfer venue analysis under § 1404(a) strongly support transferring this case to

Oregon. *Jones*, 211 F.3d at 498-99 (discussing factors).[6]

Here, Defendant has failed to meet its burden of proof. Tellingly,

Defendant has submitted <u>no evidence whatsoever</u> with respect to *any* of these

factors. In fact, Defendant freely admits in its pleadings that, but for its

interpretation of the Forum Selection Clause, Plaintiff's decision to file in this

---

[6] A motion to transfer venue under § 1404(a) requires a court to weigh multiple factors in analyzing whether transfer is appropriate in a particular case, including: (1) the location where the relevant agreements were negotiated and executed, (2) the state that is most familiar with the governing law, (3) the plaintiff's choice of forum , (4) the respective parties' contacts with the forum, (5) the contacts relating to the plaintiff's cause of action in the chosen forum, (6) the differences in the costs of litigation in the two forums, (7) the availability of compulsory process to compel attendance of unwilling non-party witnesses, and (8) the ease of access to sources of proof. *Jones*, 211 F.3d at 498-99. These factors are often divided into the "public interest factors" and the "private interest factors." *See, e.g.*, *Tuazon v. R.J. Reynolds Tobacco Co.*, 433 F.3d 1163, 1180 (9th Cir. 2006) ("[W]e will not disturb the plaintiff's original choice of forum unless the private interest and the public interest factors strongly favor dismissal.") (internal quotations omitted).

District was appropriate. *See Answer and Counterclaims to Complaint for Declaratory Relief* (the "Answer" and the "Counterclaim," respectively) [Dkt. No. 16], Answer, at ¶ 9 ("[I]n the absence of the Contract's governing forum selection clause, venue in this Court would otherwise be proper pursuant to 29 U.S.C. § 1391"); Counterclaim at ¶ 16 ("[V]enue would be otherwise proper in this judicial district pursuant to 28 U.S.C. § 1391 because NIKE regularly conducts business in this judicial District . . .").

Moreover, to the extent the Court finds it necessary even to consider the "private"[7] and "public"[8] interest factors common to a § 1404(a) analysis notwithstanding Defendant's failure to put forth any evidence, these factors undoubtedly favor this Court's retention of the case. As for the "private" factors, the key events underlying the allegations of the Complaint occurred in this District (*e.g.*, where Plaintiff created the Leonard Logo while attending SDSU).

---

[7] The "private interest factors" include: "(1) the residence of the parties and the witnesses; (2) the forum's convenience to the litigants; (3) access to physical evidence and other sources of proof; (4) whether unwilling witnesses can be compelled to testify; (5) the cost of bringing witnesses to trial; (6) the enforceability of the judgment; and (7) "all other practical problems that make trial of a case easy, expeditious and inexpensive." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1145 (9th Cir. 2001), citing *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 508 (1947).

[8] The "public interest factors" include: "(1) local interest of lawsuit; (2) the court's familiarity with governing law;(3) burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving a dispute unrelated to this forum." *Lueck v. Sundstrand Corp.*, 236 F.3d 1137, 1147 (9th Cir. 2001), citing *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257, 102 S. Ct. 252, 70 L.Ed.2d 419 (1981).

21

Moreover, a number of key witnesses to Plaintiff's creation of the Leonard Logo reside in California (*e.g.*, Plaintiff's former coaches, teammates, family and others who assisted with the design). Finally, Plaintiff is employed by the Los Angeles Clippers, requiring him to spend considerable time in Southern California. In contrast, Defendant is a multinational corporation with substantial operations throughout Southern California (and the entire world). Defendant interacted with Leonard for the most part in Texas, where Leonard was employed during his relationship with Nike, and in Southern California, where Leonard spent significant time in the off-season, and certainly not in Oregon. Defendant will experience <u>absolutely no harm whatsoever</u> if forced to defend this suit in California.

As for the "public" factors, the Court has a significant interest in the resolution of this dispute given Plaintiff's employment by the Los Angeles Clippers and significant ties to Southern California. Moreover, the cost and logistical difficulty of this case would be amplified if this case were transferred to Oregon. Accordingly, even if the Court were to find that the Forum Selection Clause is applicable (which it should not), it should nonetheless decline to transfer the case upon application of the "public interest factors." *See Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1083 (E.D. Cal. 2019) ("Once a court finds that a forum selection clause is valid, it must balance

22

public interest factors to determine whether dismissal of the action in favor of the other forum would promote justice").

As (1) the Forum Selection Clause does not apply, and (2) Defendant has failed to present <u>any evidence whatsoever</u> on either the "public" or "private" interest factors, Defendant's Motion to Transfer Venue should be denied.

**WHEREFORE**, Plaintiff respectfully requests the Court to deny the Motion to Transfer, retain jurisdiction of this case and grant such other and further relief as is just and proper.

Dated:  August 26, 2019          SULLIVAN & WORCESTER, LLP

By: /s/Peter R. Ginsberg
Peter R. Ginsberg
prginsberg@sullivanlaw.com
Mitchell C. Stein *(pro hac vice pending)*
mstein@sullivanlaw.com
1633 Broadway
New York, NY 10019
Tel:  212.660.3000
Fax:  212.660.3001

Nathaniel R.B. Koslof *(pro hac vice pending)*
nkoslof@sullivanlaw.com
One Post Office Square
Boston, MA 02109
Tel.:  617.338.2800
Fax.:  713.338.2880

-and-

DUCKOR SPALDING METZGER & WYNNE
A Law Corporation

23

By: /s/Scott L. Metzger
Scott L. Metzger
metzger@dsmwlaw.com
William Patrick Keith
keith@dsmw.com
101 W. Broadway, Suite 1700
San Diego, CA 92101
Tel.: 619.209.3000
Fax: 619.209.3042

*Attorneys for Plaintiff Kawhi Leonard*

24