| | |
|---|---|
| 1 | Stanley J. Panikowski (Bar No. CA-224232) |
| | stanley.panikowski@dlapiper.com |
| 2 | **DLA PIPER LLP (US)** |
| | 401 B Street, Suite 1700 |
| 3 | San Diego, California 92101-4297 |
| | Tel:   619.699.2700 |
| 4 | Fax:  619.699.2701 |
| 5 | Tamar Y. Duvdevani (*pro hac vice*) (NY Bar No. 4148847) |
| 6 | tamar.duvdevani@dlapiper.com |
| | Matthew N. Ganas (*pro hac vice*) (NY Bar No. |
| 7 | 5070636) |
| | matt.ganas@dlapiper.com |
| 8 | DLA PIPER LLP (US) |
| | 1251 Avenue of the Americas |
| 9 | New York, New York  10020-1104 |
| | Tel: 212.335.4500 |
| 10 | Fax: 212.335.4501 |
| 11 | Attorneys for Defendant |
| | NIKE, Inc. |

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWHI LEONARD, | CASE NO. 19-CV-01035-BAS-BGS |
| Plaintiff, | |
| v. | **DEFENDANT NIKE, INC.'S REPLY BRIEF IN SUPPORT OF MOTION TO TRANSFER VENUE** |
| NIKE, INC., | |
| Defendant. | Date: September 9, 2019 |
| | **NO ORAL ARGUMENT UNLESS REQUESTED BY THE COURT** |
| | Courtroom: 4B |
| | Judge: Hon. Cynthia A. Bashant |

# TABLE OF CONTENTS

|      |                                                                                      | Page |
|------|--------------------------------------------------------------------------------------|------|
| I.   | PRELIMINARY STATEMENT                                                                | 1    |
| II.  | THE FORUM SELECTION CLAUSE APPLIES TO PLAINTIFF'S CLAIMS                             | 3    |
|      | A. Resolution of Plaintiff's Copyright Claim Requires Interpretation of the Contract | 3    |
|      | B. The Accused Conduct Does Not Predate The Agreement                                | 6    |
| III. | PLAINTIFF MISCONSTRUES THE APPLICABLE LEGAL STANDARDS                                | 7    |
| IV.  | CONCLUSION                                                                           | 10   |

# TABLE OF AUTHORITIES

**Page (s)**

**CASES**

*Astor Holdings, Inc. v. Roski*,
 No. 01 Civ. 1905 (GEL), 2002 WL 72936 (S.D.N.Y. Jan. 15, 2002) ................... 9

*Bancroft Life & Cas. ICC, Ltd. v. Scolari*,
 No. C11-5017RBL, 2011 WL 13229006 (W.D. Wash. Nov. 28,
 2011) ............................................................................................................. 6, 7

*Bremen v. Zapata Off–Shore Co.*,
 407 U.S. 1 (1972) ................................................................................................ 8

*Color Switch LLC v. Fortafy Games DMCC*,
 377 F. Supp. 3d 1075 (E.D. Cal. 2019) ............................................................... 9

*Dvorak v. Moody's Analytics Inc.*,
 No. C 10-03657 JSW, 2010 WL 11636243 (N.D. Cal. Oct. 5, 2010) ................ 10

*Goldman v. U.S. Transport & Logistics, LLC*,
 Case No. 17-cv-00691-BAS-NLS, 2017 WL 6541250 (S.D. Cal.
 Dec. 20, 2017) ..................................................................................................... 9

*Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*,
 485 F.3d 450 ....................................................................................................... 8

*Holmes Grp., Inc. v. Vornado Air Circulation Sys.*,
 535 U.S. 826 (2002) .......................................................................................... 10

*Lombardozzi v. Debroux*,
 1992 WL 246872 (N.D.N.Y Sept. 23, 1992) ..................................................... 10

*Manetti–Farrow, Inc. v. Gucci America, Inc.*,
 858 F.2d 509 (9th Cir. 1988) ............................................................................... 2

*Murphy v. Schneider National, Inc.*,
 362 F.3d at 1137 ..................................................................................... 5, 7, 8, 9

*Petersen v. Boeing Co.*,
 715 F.3d 276 (9th Cir. 2013) ............................................................................... 8

# TABLE OF AUTHORITIES
## (Cont.)

**Page (s)**

*Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*,
   809 F. Supp. 2d 1300 (N.D. Okla. 2011) ............................................................... 9

*Thomas v. Carnival Corp.*,
   573 F.3d 1113 (11th Cir. 2009) ......................................................................... 7

*TradeComet.com LLC v. Google, Inc.*,
   435 F. App'x 31 (2d Cir. 2011) .......................................................................... 7

*Wachovia Bank N.A. v. Schmidt*,
   445 F.3d 762 (4th Cir. 2006) ............................................................................ 7

**STATUTES**

28 U.S.C. § 1295(a)(1) ............................................................................................. 10

I.     **PRELIMINARY STATEMENT**

Plaintiff plays the same word games in his opposition to NIKE's transfer motion that he did in his complaint, namely, indiscriminately referring to the two distinct images below as the "Leonard Logo":

| Leonard's Drawing Submitted to NIKE | NIKE's Copyrighted Claw Design |
|---|---|
| [drawing of hand outline with "KL" shape inside] | [black stylized claw/hand design] |

In his complaint for a declaration of copyright ownership, Plaintiff sowed this confusion to hide the fact that the rough sketch he provided to NIKE is not the "Claw Design." The "Claw Design" is instead the refined logo that NIKE created during the course of the parties' Contract and registered with the United States Copyright Office. In his opposition, Plaintiff continues this charade in an attempt to contravene the forum selection clause to which he expressly agreed. In particular, Plaintiff argues that because the "Leonard Logo" was created before the Contract term, his claims "predate" the Contract and the Oregon forum selection provision does not apply. But the Claw Design at issue in this litigation is not Mr. Leonard's earlier rough sketch and it was not created before the Contract term. Moreover, Plaintiff's accusations of fraud against NIKE do not "predate" the Contract, but rather go directly to its key intellectual property ownership provision.

Wordplay aside, Plaintiff's own allegations mandate application of the forum selection provision. In particular, Plaintiff alleges that (1) prior to the Contract, he conceived of the idea of a logo featuring a drawing of his hand; (2) during the term

WEST/287623983

- 1 -

REPLY BRIEF ISO MOTION TO TRANSFER VENUE
19-cv-01035-BAS-BGS

of the parties' Contract, he provided a sketch of his hand to NIKE so that NIKE could use it to create a logo in connection with the Contract; (3) NIKE did indeed use that sketch in creating the finished work (the Claw Design) that NIKE used on apparel worn and endorsed by Plaintiff during the term of the Contract; and (4) NIKE fraudulently registered the Claw Design – *not* the sketch drawn by Plaintiff – with the Copyright Office. According to Plaintiff's allegations, that registration is fraudulent because Plaintiff, not NIKE, created the Claw Design.

Despite these allegations, Plaintiff opposes NIKE's motion to transfer this action to the District of Oregon by asserting that "Plaintiff's claims predate and do not in any way depend on the Nike Agreement." (Dkt. No. 23 at 2.) This position makes no sense and appears to be premised on a fundamental misunderstanding of copyright law—namely, that Plaintiff owns the copyright in the Claw Design because he came up with an idea used in its creation. But the fact that Plaintiff provided to NIKE an earlier work and an idea that was used as inspiration for the Claw Design does not mean that he owns the work, nor does it mean that Plaintiff's claims against NIKE "predate" the Contract. Moreover, the fact that the Contract has an applicable intellectual property ownership provision makes it necessary to interpret the Contract to resolve Plaintiff's copyright ownership and fraud claims. Nevertheless, Plaintiff asserts that this case should not be transferred to the venue agreed to by the parties in the Contract because (1) they sound in copyright law and (2) the Contract cannot be retroactively applied.

First, the fact that Plaintiff's claims are brought under the United States Copyright Act does not mean that they do not arise under the Contract. To the contrary, it is well-established in the Ninth Circuit that a contractual forum selection clause applies to non-contract claims when "resolution of the [copyright] claims relates to interpretation of the contract." *Manetti–Farrow, Inc. v. Gucci America, Inc.,* 858 F.2d 509, 514 (9th Cir. 1988). Such is the case here, where the ultimate question of copyright ownership cannot possibly be resolved without interpretation

of the Contract's intellectual property provision. Plaintiff does not assert against NIKE some tort claim completely unrelated to the terms and performance of the Contract. Rather, Plaintiff's claims go to the heart of the parties' agreement, in that the Claw Design was created in connection with the Contract (even if Plaintiff's hand sketch was not), and the Contract governs NIKE's ownership of the design and Plaintiff's acknowledgement of that ownership. Second, Plaintiff's related assertion that the forum selection clause cannot be applied retroactively is also unavailing. NIKE does not seek to apply the clause to allegedly tortious conduct in which it engaged before the Contract was executed, but rather to Plaintiff's claims that he owns the Claw Design created by NIKE in connection with the Contract.

Accordingly, and for the reasons discussed below and in the opening brief, this action should be transferred to the District of Oregon.

## II. THE FORUM SELECTION CLAUSE APPLIES TO PLAINTIFF'S CLAIMS

Plaintiff's arguments in opposition to NIKE's motion to transfer boil down to two points, that the forum selection clause (1) does not apply because Plaintiff's claims arise under United States copyright law, and the outcome of that issue "does not depend on the Nike Agreement" (Dkt. No. 23 at 14-15); and (2) cannot be "retroactively applied" and Plaintiff's claim is "premised on conduct that predated execution of the Nike Agreement." (*Id*. at 18.) Both of these arguments fail.

### A. Resolution of Plaintiff's Copyright Claim Requires Interpretation of the Contract

Plaintiff argues that the disputed issue is ownership of the copyright in the "Leonard Logo," and that the outcome of that issue does not depend on the Agreement because "the logo was created prior to the Nike Agreement." (Dkt. No. 23 at 15, emphasis in original.) To the extent this statement refers to NIKE's copyrighted Claw Design, it is not only false, but ignores Plaintiff's own allegations.
/////

As noted in opening and as seen in Section I, Plaintiff's allegations deliberately conflate two works: the sketch that Plaintiff created and showed to NIKE in furtherance of the Agreement, and the Claw Design that NIKE's designers created during the Contract term in connection with Plaintiff's endorsement deal.

While Plaintiff does allege that he conceived and began creating the sketch reproduced in Section I above on the left before the Contract term, his allegations unequivocally admit that the copyrighted Claw Design on the right was created – at least in part – by NIKE, during and in connection with the Contract. Plaintiff alleges:

- "At some point during the term of the Nike Agreement, Nike began discussions with Leonard about creating a unique logo to affix to merchandise to be sold under the Nike Agreement." (Compl. ¶ 23)

- "Nike reviewed the Leonard Logo, modified it, and returned pro formas to Leonard in the Spring 2014." (Compl. ¶ 26)

- "In early Summer 2014, Nike provided additional proposals to Leonard using the Leonard Logo." (Compl. ¶ 28)

- "Leonard accepted one of the June 2014 proposals and granted Nike permission to affix the logo, based upon the Leonard Logo, on Nike merchandise during the term of the Nike Agreement." (Compl. ¶ 29)

- "Leonard permitted Nike to use the Leonard Logo for their mutual benefit and for the specific purpose of effectuating the Nike Agreement for the term of the contract." (Compl. ¶ 32)

Plaintiff also alleges that he sought and received trademark registration for the "Leonard Logo." (Compl. ¶ 42.) A review of the Trademark Office records shows that the mark registered to Plaintiff[1] is indeed the Claw Design that was "modified" by NIKE and *provided by NIKE to Leonard* in June 2014, during the Contract term,

---

[1] On July 17, 2019, NIKE filed a cancellation proceeding with the Trademark Trial and Appeal Board. (Duvdevani Decl. Ex. B.)

and is the same Claw Design that NIKE registered with the Copyright Office. (Duvdevani Decl. Ex. A.) These allegations are all admissions that the logo at issue – the Claw Design – was created during the term of the Agreement and in furtherance of the Agreement.[2]

Following from this point, the Contract's key intellectual property ownership provision states:

> CONSULTANT (a) acknowledges that…NIKE shall exclusively own all rights, title and interest in and to any logos, trademarks, service marks, characters, personas, copyrights, shoe or other product designs, patents, trade secrets or other forms of intellectual property created by NIKE (and/or its agents), CONSULTANT or ATHLETE in connection with this Contract; [and] (b) shall completely cooperate with NIKE in its efforts to obtain and maintain protection for such right, title and interest,….

(Welliver Decl., Ex. 1 ¶ 8.) In other words, Plaintiff expressly agreed that all logos created in connection with the Contract are owned by NIKE. This necessarily includes the Claw Design that, according to Plaintiff, NIKE fraudulently registered and does not own. As a result, interpretation of the Contract is vital to resolve Plaintiff's copyright ownership claim: NIKE's defenses and counterclaims all relate to the fact that NIKE, not Plaintiff, created the Claw Design in connection with the Contract, that the Claw Design thus belongs to NIKE, and that Plaintiff contractually agreed that the Claw Design belongs to NIKE, regardless of who created it.

As NIKE previously explained, the fact that Plaintiff's claim is couched in copyright does not render the forum selection clause inapplicable. To the contrary,

---

[2] Plaintiff cannot hide behind his vague allusions to the "Leonard Logo" and the "modified" Leonard Logo in light of the evidence submitted by NIKE in support of its motion to transfer. Plaintiff also cannot have it both ways: while *Murphy v. Schneider National*, Inc., 362 F.3d 1133 (9th Cir. 2004), states that factual disputes should favor the non-movant, it also states that the Court need not accept those allegations as true and can look beyond them in making its determination as to proper venue. *Id.* at 1137.

courts in the Ninth Circuit have frequently found that copyright-based claims fall within the scope of forum selection clauses similar to the one in the parties' Contract when the interpretation of the contract is relevant to that copyright dispute. (Dkt. No. 17-1 at 13-14). This is clearly the case here, where NIKE's position is that Plaintiff contractually agreed that the Claw Design belongs to NIKE, who created the Claw Design in connection with the Contract.[3]

### B. The Accused Conduct Does Not Predate The Agreement

Plaintiff's argument that the forum selection clause "cannot be retroactively applied" because his allegations predate the Contract fares no better. As noted above, the key allegations in the complaint all directly relate to the Contract between Plaintiff and NIKE, and Plaintiff's claim for relief seeks a declaration that he is the "sole author" of the Claw Design, that Plaintiff does not infringe NIKE's rights that it may possess in the Claw Design, and that NIKE committed fraud on the Copyright Office in registering the Claw Design. (Compl. ¶ 56.) Given the timeline, these claims cannot possibly predate Plaintiff's agreement with NIKE. The cases cited by Plaintiff in this section of his brief are inapposite, do not stand for the propositions Plaintiff claims, and/or are overall not helpful to his position. *See, e.g.*, *Bancroft Life & Cas. ICC, Ltd. v. Scolari*, No. C11-5017RBL, 2011 WL 13229006, at *1 (W.D. Wash. Nov. 28, 2011) (fraud-based counterclaims did not

---

[3] Plaintiff also asserts that the forum selection clause should be construed narrowly because it was drafted by NIKE. (Dkt. No. 23 at 12-13.) But the forum selection clause's "arising hereunder" language is not ambiguous, nor does NIKE argue that the provision applies to claims that do not arise under the agreement. To the contrary, NIKE's position is that Plaintiff's claims – by Plaintiff's own allegations – do arise under the Contract. Plaintiff has not filed a lawsuit against NIKE for some unrelated tortious conduct. Rather, Plaintiff has accused NIKE of fraud on the Copyright Office and for a declaration of copyright ownership over the logo that NIKE created in connection with the Contract. It appears that the only dispute between the parties is legal in nature; whether Plaintiff's claim that it provided the initial idea for a logo of a hand incorporating the initials "KL" and the number "2" confers to Plaintiff a copyright in the so-called "modified" work. NIKE will ultimately demonstrate that it owns the Claw Design as a matter of copyright (and contract) law even if Plaintiff's allegations are accepted as true, but that is an issue for another day.

WEST/287623983 - 6 -
REPLY BRIEF ISO MOTION TO TRANSFER VENUE
19-cv-01035-BAS-BGS

fall under clause that "[t]he benefits of this coverage may only be enforced within the jurisdiction and under the laws of St. Lucia"); *TradeComet.com LLC v. Google, Inc.*, 435 F. App'x 31 (2d Cir. 2011) (enforcing forum selection clause, and otherwise irrelevant because case related to alleged anticompetitive conduct that pre-dated agreement containing forum selection clause); *Thomas v. Carnival Corp.*, 573 F.3d 1113 (11th Cir. 2009) (case concerns retroactive application of arbitration provision in cruise employee's injury claims; case later abrogated); *Wachovia Bank N.A. v. Schmidt*, 445 F.3d 762, 767-69 (4th Cir. 2006) (noting that, unlike here, Wachovia's alleged wrongful inducement giving rise to the claims occurred before the parties' note was executed).

### III. PLAINTIFF MISCONSTRUES THE APPLICABLE LEGAL STANDARDS

As set forth above, Plaintiff's arguments in opposition to NIKE's motion to transfer fail on their merits. But, in addition, Plaintiff premises his opposition on several legal errors, all of which reflect the weakness of his position.

First, citing *Murphy v. Schneider National, Inc.*, 362 F.3d at 1137, Plaintiff notes that in evaluating a motion to transfer venue, the trial court must draw all reasonable inferences and resolve all factual conflicts in favor of the non-movant. (Dkt. No. 23 at 10.) But Plaintiff then uses this tenet throughout his brief to argue that the Court should accept as true Plaintiff's allegations that he created the "Leonard Logo" in 2011 and that, therefore, the forum selection clause is inapplicable. (*Id.* at 14, 15, 19-20). As discussed above, the date that Plaintiff drew his hand sketch is not relevant to whether he owns the Claw Design created by NIKE during the course of the parties' relationship. Regardless, claiming that this Court must accept that allegation as true is not a correct application of Ninth Circuit precedent.

In *Murphy*, the Ninth Circuit held that "the fact issues pertinent to the *enforceability* [not the application] of the forum selection clause are to be viewed in

WEST/287623983 - 7 -
REPLY BRIEF ISO MOTION TO TRANSFER VENUE
19-cv-01035-BAS-BGS

1 the light most favorable to . . . the non-moving party." *Murphy*, 362 F.3d at 1140
2 (emphasis added). Contrary to Plaintiff's assumptions, this Court is not required to
3 accept as true his underlying factual allegations, but rather only specific facts
4 relating to the few exceptions to enforceability of a forum selection clause. The
5 Ninth Circuit explained that because forum selection clauses are "presumptively
6 valid," they should be honored absent compelling and countervailing reasons, and
7 that the "party challenging the clause bears a 'heavy burden of proof' and must
8 'clearly show that enforcement would be unreasonable and unjust, or that the clause
9 was invalid for such reasons as fraud or over-reaching.'" *Murphy*, 362 F.3d at 1140
10 (quoting *Bremen v. Zapata Off–Shore Co.*, 407 U.S. 1, 12 (1972)); (Dkt. No. 17-1 at
11 10). The court then set forth the three *Bremen* exceptions to enforcement of a forum
12 selection provision: (1) if the inclusion of the clause in the agreement was the
13 product of fraud or overreaching; (2) if the party wishing to repudiate the clause
14 would effectively be deprived of his day in court were the clause enforced; and (3) if
15 enforcement would contravene a strong public policy of the forum in which suit is
16 brought. *Id.* The court analyzed whether the applicable facts, viewed in the non-
17 movant's favor, supported any of the three factors. *Id.* at 1141-44.
18       Accordingly, courts faced with a motion to transfer venue in light of a forum
19 selection provision must draw reasonable inferences and accept as true facts relating
20 only to these three exceptions, *not* to the underlying allegations of the complaint.
21 The Ninth Circuit cases cited by Plaintiff demonstrate this point. *See, e.g.*, *Petersen*
22 *v. Boeing Co.*, 715 F.3d 276, 283 (9th Cir. 2013) (discussing Petersen's arguments
23 for the second *Bremen* factor and finding that "the evidence submitted and the
24 allegations made by Petersen were more than sufficient to create a triable issue of
25 fact as to whether the forum selection clause at issue here is enforceable under
26 *Bremen*"); *Holland Am. Line, Inc. v. Wartsila N. Am., Inc.*, 485 F.3d 450, 456-57
27 /////
28 /////

(9th Cir. 2007) (discussing only the three *Bremen* exceptions).[4] Plaintiff here has not asserted any facts to demonstrate that the forum selection clause in the Contract was fraudulent (it is not), nor that Mr. Leonard would be deprived of his day in court should the case be transferred to Oregon (he will not), nor that enforcement would contravene this forum's strong public policy (it would not). As such, Plaintiff's reliance on *Murphy* is unavailing.

Second, Plaintiff chastises NIKE for basing its transfer motion "solely" on the forum selection clause and submitting "no evidence whatsoever" on the private or public factors Plaintiff discussed on pages 20-23 of his brief. (Dkt. No. 23 at 11.) Again, Plaintiff misstates the applicable legal standard. As explained by NIKE in opening, when faced with a presumptively enforceable forum selection clause, courts are not to defer to plaintiff's choice of forum or consider private factors, but are only to consider public interest factors. *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1083 (E.D. Cal. 2019). This Court has explained as much in its own transfer decision. *See Goldman v. U.S. Transport & Logistics, LLC*, Case No. 17-cv-00691-BAS-NLS, 2017 WL 6541250, *2 (S.D. Cal. Dec. 20, 2017) ("[W]hen a case involves a forum selection clause, courts do not consider a plaintiff's choice of forum, private interests, or choice of law."). With regard to public interests, NIKE *did* explain in its opening brief that there exists no public policy reason for this action to be heard in this District rather than the agreed-upon Oregon forum, as the parties' dispute does not bear any greater connection to California than Oregon, the parties agreed that their agreement would be "governed

/////

/////

---

[4] *Sleepy Lagoon, Ltd. v. Tower Grp., Inc.*, 809 F. Supp. 2d 1300, 1306 (N.D. Okla. 2011), and *Astor Holdings, Inc. v. Roski*, No. 01 Civ. 1905 (GEL), 2002 WL 72936, at *7 (S.D.N.Y. Jan. 15, 2002), also cited by Plaintiff (Dkt. No. 23 at 10), do not involve forum selection provisions and thus provide no support to Plaintiff's view.

WEST/287623983 - 9 -
REPLY BRIEF ISO MOTION TO TRANSFER VENUE
19-cv-01035-BAS-BGS

1  by and construed in accordance with" Oregon law, and their copyright claims will
2  be governed by the same precedent in either District. (Dkt. No. 17-2 at 12.)[5]

Third, citing *Holmes Grp., Inc. v. Vornado Air Circulation Sys.*, 535 U.S. 826 (2002), Plaintiff asserts that NIKE's compulsory counterclaims for breach of contract are "irrelevant" to its motion to transfer. (Dkt. No. 23 at 18.) *Holmes*, however, is not a forum selection case, but relates to whether a compulsory counterclaim for patent infringement creates "arising under" jurisdiction for the Federal Circuit to hear the dispute. *Id*. at 829. And, in fact, *Holmes* has been superseded by 28 U.S.C. § 1295(a)(1), which was amended to include jurisdiction for compulsory patent counterclaims. *See* 28 U.S.C. § 1295(a)(1).

On the other hand, *Dvorak v. Moody's Analytics Inc.*, No. C 10-03657 JSW, 2010 WL 11636243, at *2 (N.D. Cal. Oct. 5, 2010), cited by NIKE, is directly on point because Plaintiff's claims, regardless of their copyright nature, require interpretation of the Agreement. *See also, e.g.*, *Lombardozzi v. Debroux*, 1992 WL 246872, *4 (N.D.N.Y Sept. 23, 1992) (where counterclaim raises the agreement with forum selection clause, at least some portion of the overall dispute "arises out of" or "relates to" that agreement and transfer to the selected forum is appropriate).

## IV. CONCLUSION

For these reasons and for those stated in the opening brief, NIKE's motion to transfer this action to the District of Oregon should be granted.

---

[5] Even if the private and public factors discussed by Plaintiff were relevant (Dkt. No. 23 at 21-23), they do not help Plaintiff's cause. Contrary to Plaintiff's assertions, as many if not more "key events" occurred at NIKE's headquarters in Oregon than in this District, where NIKE's witnesses are located and where NIKE signed the Contract, and Plaintiff's newfound employment with the Los Angeles Clippers in the Central District of California does not support a refusal to enforce the parties' forum selection provision. Moreover, the fact that Mr. Leonard, who just signed a three-year **$103 million dollar** contract with the Clippers, is complaining about the "cost" of the lawsuit that he filed is unreasonable – to put it mildly. *See* https://www.forbes.com/sites/curtisrush/2019/07/10/in-another-kawhi-leonard-surprise-former-toronto-raptor-goes-short-term-with-three-year-103-million-deal-with-los-angeles-clippers/#4bdfa374377e.

Dated: August 30, 2019

**DLA PIPER LLP (US)**

*/s/ Tamar Y. Duvdevani*
Stanley J. Panikowski
401 B Street, Suite 1700
San Diego, CA 92101
Tel: 619.699.2700
Fax: 619.699.2701

Of Counsel:

Tamar Y. Duvdevani (*pro hac vice*)
Matthew N. Ganas (*pro hac vice*)
1251 Avenue of the Americas
New York, New York 10020-1104
Tel: 212.335.4500
Fax: 212.335.4501

*Attorneys for Defendant NIKE, Inc.*