UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KAWHI LEONARD,<br><br>        Plaintiff,<br><br> v.<br><br>NIKE, INC.,<br><br>        Defendant. | Case No. 19-cv-01035-BAS-BGS<br><br>**ORDER GRANTING MOTION TO TRANSFER VENUE**<br><br>**[ECF No. 17]** |

   Plaintiff Kawhi Leonard filed suit against Nike, Inc., seeking declaratory relief regarding ownership and use of a logo. Nike moves to transfer this case to the District of Oregon. ("Mot.," ECF No. 17.) The Court finds this Motion suitable for determination on the papers and without oral argument. Civ. L. R. 7.1(d)(1). For the reasons stated below, the Court **GRANTS** Nike's Motion.

## I. BACKGROUND

   Kawhi Leonard is an American basketball player currently playing in the NBA. ("Compl.," ECF No. 1, ¶ 12.) During his career, Leonard "contemplated and conceived ideas" for a personal, unique logo. (*Id.* ¶ 17.) Leonard is known for his

"extremely large hands" and has worn the number 2 for much of his career. (*Id.* ¶¶ 15, 16.) In December 2011 or January 2012, Leonard refined a logo that encompassed "his large and powerful hands, his initials and his jersey number." (*Id.* ¶ 18.)

On October 26, 2011, Nike and Leonard entered into a "Men's Pro Basketball Contract" (hereinafter, "the Nike Agreement"). (*Id.* ¶ 20.) The term of the Nike Agreement was from October 1, 2011 to September 30, 2014, and thereafter extended in a series of agreements that expired on September 20, 2018. (*Id.* ¶ 21.) The purpose of the Nike Agreement was for Leonard to provide "personal services and expertise in the sport of professional basketball and endorsement of the Nike brand and use of Nike products." (*Id.* ¶ 22.)

At some point after entering into the Nike Agreement, the parties began discussing creating a unique logo to affix to merchandise to be sold under the Nike Agreement. (*Id.* ¶ 23.) The timeline of the logo development and how the idea began is unclear. Leonard alleges Nike provided ideas for modifying the logo that Leonard had designed, but he rejected most of the concepts. (*Id.* ¶¶ 24, 25.) Leonard states he then sent Nike the logo he had designed and "said he would permit Nike to use [it] during the term of the Nike Agreement (under his supervision and control.)" (*Id.* ¶ 25.) In Spring 2014, Nike modified the logo and sent it back to Leonard, but Leonard rejected the proposals. (*Id.* ¶¶ 26, 27.) In Summer 2014, Nike sent additional proposals to Leonard, and Leonard accepted one of the proposals and gave Nike permission to affix that logo to Nike merchandise during the term of the Nike Agreement. (*Id.* ¶ 29.)

Leonard claims Nike assured him that he continued to own the logo, and he argues he never transferred the rights of the logo to Nike. (*Id.* ¶¶ 31, 32.) Leonard states he continued to use the logo on non-Nike goods, which Nike never challenged, and he alleges Nike acted consistent to a party without any ownership in the logo. (*Id.* ¶¶ 34, 35.)

At some point, Nike filed an application with the United States Copyright Office to register the "Kawhi Leonard Logo." On the application, Nike claimed authorship of the logo and rights and permissions to the logo. (*Id.* ¶ 38.) Leonard states this was done without his knowledge or consent. (*Id.* ¶ 36.) On May 11, 2017, the Copyright Office granted the application. Leonard alleges the application was granted due to Nike's false claims that it authored the logo. (*Id.* ¶ 40.)[1] Leonard intends to use the copyrighted logo and affix the logo on items he plans to distribute. Leonard seeks a declaration that he is the author of the logo, that his use of the logo does not infringe on Nike's rights, and that Nike committed fraud on the Copyright Office.

Nike points to a forum selection clause in the parties' Agreement as reason for the Court to transfer this case to the District of Oregon.[2]

## II. LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought[.]" 28 U.S.C. § 1404(a). Section 1404 "place[s] discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988).

In a case not involving a forum-selection clause, "a district court considering a § 1404(a) motion must evaluate both the convenience of the parties and various public-interest considerations." *Atl. Marine Const. Co. v. U.S. Dist. Court for W.*

---

[1] Leonard has since applied for and received registration of two trademarks "consisting of, and inspired by, Leonard's creation of the Leonard Logo, one an image of his hand, his initials and jersey number and a second logo based upon letters and numbers corresponding to Leonard's initials and jersey number." (*Id.* ¶ 42.)

[2] The Nike Agreement is not attached to the Complaint, but Nike has provided a copy. In deciding a motion to transfer venue, the Court may consider facts outside of the pleadings. *See Morgan Tire of Sacramento, Inc. v. Goodyear Tire & Rubber Co.*, 60 F. Supp. 3d 1109, 1113 (E.D. Cal. 2014). The Court therefore considers the Nike Agreement.

*Dist. of Texas*, 571 U.S. 49, 62 (2013). "The calculus changes, however, when the parties' contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the most proper forum.'" *Id.* at 63 (quoting *Stewart*, 487 U.S. at 31). "[A] valid forum-selection clause [should be] given controlling weight in all but the most exceptional cases." *Stewart*, 487 U.S. at 33. A valid forum selection clause, while not dispositive, is a "significant factor" in a section 1404 analysis. *Jones v GNC Franchising, Inc.*, 211 F.3d 495, 499 & 499 n.20 (9th Cir. 2000). Finally, "[i]nterpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law." *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1431 (N.D. Cal. 1997) (citing *Manetti-Farrow, Inc. v. Gucci Am.*, 858 F.2d 509, 513 (9th Cir. 1988)).

**III. ANALYSIS**

The Nike Agreement's forum selection clause provides that the agreement "shall be governed by and construed in accordance with the laws of the State of Oregon and except as provided in Paragraph 14, any suit or action arising hereunder shall be filed in a Court of competent jurisdiction within the State of Oregon." (Agreement ¶ 21.)

Leonard does not dispute the validity of the forum selection clause, only its applicability. Leonard's first point is because he created the logo in 2011/2012 prior to the term of the Nike Agreement, the Nike Agreement does not apply to this dispute over the logo. ("Opp'n," ECF No. 17, at 11.) Indeed, Leonard drafted a drawing of a logo before he entered into the Nike Agreement and eventually submitted it to Nike, then the parties worked together to create a logo. (Compl. ¶¶ 18, 23–29.) The relevant drawing and copyrighted logo are below:

| Leonard's Drawing Submitted to NIKE | NIKE's Copyrighted Claw Design |
|---|---|
|  |  |

The parties' respective naming of the above two images throughout their briefs epitomizes their dispute. Leonard refers to the two images as one in the same: "the Leonard Logo." Nike refers to the drawing on the left as "the Leonard Logo" but refers to the design on the right as "the Claw Design."[3] Leonard argues because he designed the hand-drawn logo before he entered into the Nike Agreement, this suit does not arise under the Nike Agreement. Nike disagrees, arguing this suit arises under the Nike Agreement because the parties dispute ownership of the copyrighted logo, which was created during the term of the Nike Agreement. Nike points to the intellectual property provision of the Nike Agreement, which provides that Nike owns all logos and trademarks created by Nike or by Leonard "in connection with this Contract." (Agreement ¶ 8.)

The language in the forum selection clause here—that any suit "arising hereunder" shall be filed in Oregon— is narrower than alternative language that is often used: "arising out of or relating to." *See Mediterranean Enters., Inc. v. Ssangyong Corp.*, 708 F.2d 1458, 1464 (9th Cir. 1983). But even with only "arising under" language, "forum-selection clauses are not meant to be construed so narrowly that they only apply to actions directly related to the enforcement of the contract in

---

[3] The Court will refer to the two images as "the hand-drawn logo" and the "copyrighted logo" to avoid confusion.

which they are included." *Medina v. Oanda Corp.*, No. 5:16-CV-02170-EJD, 2017 WL 1159572, at *10 (N.D. Cal. Mar. 29, 2017). And even "a narrow forum selection clause covers claims that cannot 'be adjudicated without analyzing whether the parties were in compliance' with the agreement containing the clause." *Rey v. Rey*, 666 F. App'x 675, 676 (9th Cir. 2016) (quoting *Manetti-Farrow*, 858 F.2d at 514).

No party disputes that Leonard shared his hand-drawn design with Nike during the design process, and somehow through collaboration, the copyrighted logo was created. (*See* Compl. ¶¶ 23–29; Mot. at 1.) But Nike distinguishes the two designs, opining that while Leonard is free to use his hand-drawn logo as he pleases, Nike owns the copyrighted logo. (Mot. at 2.)

No matter the details of the design process, the dispute is clearly over the use and ownership of the finalized copyrighted logo. The creation of the hand-drawn logo certainly did not "arise under" the Nike Agreement because it predated the Nike Agreement. But, the Court finds that this suit "arises under" the Nike Agreement, as the whole point of the Complaint is to seek a declaration as to who owns the copyrighted logo, which was ultimately created and copyrighted during the term of the Nike Agreement. Leonard is disputing that Nike had the right to copyright the logo, and Nike believes it had the right per the Nike Agreement. This dispute cannot be resolved without reference to the Nike Agreement and its intellectual property provision. *See Henry v. Central Freight Lines, Inc.*, No. 16-cv-280-JAM-EFB, 2017 WL 4517836, at *2 (E.D. Cal. Oct. 10, 2017) ("Courts should construe terms such as 'arising under,' . . . narrowly, meaning the forum-selection clause encompasses only those disputes concerning 'the interpretation and performance of the contract itself.'" (quoting *Cape Flattery Ltd. v. Titan Mar., LLC*, 647 F.3d 914, 922 (9th Cir. 2011))).[4]

---

[4] Leonard also tangentially argues that the forum selection clause is arbitrary. (Opp'n at 13.) Leonard does not support this argument and does not point to any ambiguity besides generally arguing that the Nike Agreement should be construed against Nike. (*Id.*) Without any argument on the issue by Plaintiff, the Court declines to find that the clause is arbitrary.

– 6 –

Therefore, the Court rejects Leonard's argument that this suit does not arise under the Nike Agreement due to the timing of his original drawing. Similarly, the Court rejects Leonard's alternative argument that the Court would be retroactively applying the forum selection clause. (Opp'n at 15.) The Court is not doing so and is only finding that this suit falls within the scope of the clause.

Leonard also argues his claim does not arise under the Nike Agreement but instead "arises under US copyright law." (Opp'n at 13.) The Court disagrees. While the topic of his Complaint may sound in copyright, the claim involves an issue that may or may not fall under the Nike Agreement (in fact, this will likely be the bulk of the dispute); thus, the suit arises from the Nike Agreement. "[D]istrict courts in the Ninth Circuit have found that copyright infringement claims that require interpretation of an underlying contract, which includes a forum selection clause, may . . . fall within the scope of the contract's forum selection clause." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075, 1083 (E.D. Cal. 2019) (citing cases); *see also Bagdasarian Prods., LLC v. Twentieth Century Fox Film Corp.*, No. 2:10-CV-02991-JHN, 2010 WL 5154136, at *3 (C.D. Cal. Aug. 12, 2010) ("[F]or purposes of a forum selection clause, a claim arises out of a contract when it is necessary to interpret the contract to resolve the dispute."); *Graham Tech. Sols., Inc. v. Thinking Pictures, Inc.*, 949 F. Supp. 1427, 1433 (N.D. Cal. 1997) (finding although the plaintiff pled only copyright claims, resolution of the action ultimately required interpretation of the agreement, and therefore the case fell within the scope of the forum selection clause).

The Nike Agreement has a provision that governs issues of ownership of intellectual property created in connection with the Nike Agreement, and whether this provision applies to the copyrighted logo here is an issue that must be resolved. Determination of that issue will involve evaluation and interpretation of the Nike Agreement; therefore, the Court finds this suit arises under and is within the scope of the Nike Agreement's forum selection clause.

Because the Court concludes that the forum selection clause is valid, the Court must now weigh only certain public interest factors in determining the propriety of transfer. *See Atl. Marine Const. Co.*, 571 U.S. at 64. "When parties agree to a forum-selection clause, they waive the right to challenge the preselected forum as inconvenient or less convenient for themselves or their witnesses, or for their pursuit of the litigation." *Id.* Therefore, the Court must consider: "the administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; [and] the interest in having the trial of a diversity case in a forum that is at home with the law." *Id.* at 62 n.6 (alteration in original). However, consideration of public interest factors alone will "rarely defeat" a forum selection clause. *Id.* at 64.

Here, the Court finds no administrative difficulties flowing from court congestion, as there is no evidence that this Court is any more or less congested than the District of Oregon courts. Next, Leonard points out that this is a localized controversy because he has "significant ties to Southern California." (Opp'n at 22.) While this may be true, this does not create a substantial local interest that would outweigh the forum selection clause. And third, this case is based on federal law, not diversity, so all federal courts have an equal interest in the area. Accordingly, the public interest factors do not defeat the venue selected in the forum selection clause.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Nike's Motion and **TRANSFERS** this matter to the District of Oregon.

**IT IS SO ORDERED.**

**DATED: October 3, 2019**

Hon. Cynthia Bashant
United States District Judge